## O'BRIEN BROS. v. CITY OF NEW YORK et al. THE MORNING LIGHT. THE STARLIGHT.

(District Court, E. D. New York. June 25, 1924.)

**1. Shipping ⬤⟲54—Contractor held under facts not liable for failing to put out fire on scow.**

Scows, loaded with rubbish by street cleaning department of city of New York, were towed to Rikers Island, and moored with tugs alongside bulkhead. Fire was discovered at night in rubbish on one of them, lines were cut, and scow set adrift, but was damaged. *Held*, under facts, that party having contract at island to unload scow and distribute rubbish was not liable for failure to put out fire.

**2. Admiralty ⬤⟲12—Contract held not one for interpretation of admiralty court.**

Interpretation of contract between city and contractor *held* not one for admiralty court, since it was not connected with loading or unloading of scows or other maritime matters.

**3. Shipping ⬤⟲54—Liability of one hiring vessel as bailee stated.**

Ordinary contract of hiring creates relation of bailor and bailee, and does not make latter liable as insurer, but liable primarily for its negligence and secondarily when negligence is that of another to whom vessel has been intrusted by bailee.

**4. Shipping ⊚⊸58(2)—Burden of proving city's negligence for fire on scow carrying rubbish held to rest on libelant.**

Burden of proving negligence of city in fire, originating in load on scow, hired to city by libelant to carry rubbish from city docks to Rikers Island, *held* to rest on libelant.

**5. Shipping ⊚⊸54—City held under facts not liable for negligence in failing to put water on fire in scow.**

City hired scow from libelant to carry rubbish from its docks to Rikers Island for unloading and distribution. Fire originated in load when scow was moored to bulkhead at island, scow was cast adrift, and damage from fire resulted. *Held*, under facts, that casting scows adrift by libelant's men was not act in extremis, and that city, not being insurer, was not liable for negligence in failing to put fire out.

In Admiralty. Libel by O'Brien Bros., owners of scows *Morning Light* and *Starlight*, against the City of New York; the Manhattan Ash Removal Corporation being impleaded. Libel dismissed against both respondents. Petition impleading the Manhattan Ash Removal Corporation dismissed.

Decrees affirmed (C. C. A.) 7 F.(2d) 488.

Foley & Martin, of New York City, for libelant.

George P. Nicholson, Corp. Counsel, of New York City, for respondents.

INCH, District Judge. [1] The facts briefly are that in the afternoon of September 19, 1923, libelant's two scows, Morning Light and Starlight, hired out to the city by libelant, had been completely loaded with rubbish by the street cleaning department of the city of New York—the *Morning Light* at the Canal street dock, and the Starlight at the Stanton Street dock. They were then towed by a tug up to Rikers Island, and moored together with a number of other tugs alongside the bulkhead at plant No. 1.

So far as I can see, there was nothing unusual about the loading of the rubbish on these boats. They both had a large quantity of ashes and street sweepings. Nor do I find any indications that any fire had been observed or indicated in either of these barges during the time they were at these dumps or while they were being towed to Rikers Island.

About 10 o'clock that night the caretaker or so-called master of the Morning Light said he went over his scow and observed nothing out of the way. He then went to bed. About 1 o'clock in the morning he was awakened by cries of fire, and went up on deck and discovered that the rubbish on the forward portion of his scow was afire and that

certain lines had already been cast off by some one, and the other lines were soon cast off by other employees of libelant, in which operation he helped, and his scow, together with the Star Light, drifted away from the dock. When he had gone about 125 feet away he jumped overboard and swam to safety. The two boats, however, continued to drift, and were badly damaged by fire.

I am satisfied that the origin of the fire was in the rubbish of the Morning Light and did not come from shore, nor is such an occurrence unusual.

The disposal of this rubbish at Rikers Island is handled by a contractor, the respondent Manhattan Ash Removal Corporation, which has a contract with the city to unload these scows brought there by the city and distribute the rubbish, etc., on this Rikers Island, and at the time in question the evidence indicates to me that this contractor had an adequate plant, and I fail to see any liability on his part to libelant for failing to put out the fire on the Morning Light.

This case differs from a case previously decided by me, where both this contractor and the city, with full knowledge of a plainly dangerous condition, so far as fire goes, allowed certain scows chartered by the city to be placed and remain alongside of a dock where high piles of inflammable rubbish were being piled by the contractor, with no fire prevention apparatus whatever, and a fire in said rubbish on the land negligently allowed to get beyond control, which set fire to the scows.

In the present case the contractor had profited by the former disastrous fire and had a fire equipment. It maintains that it only needs such fire apparatus to protect its own property, and that, by reason of a contract with the city, the latter must furnish all fire protection to the scows except at the moment of unloading. It is unnecessary for me to determine such question, for the reason that it became apparent that hose, etc., on the dock would have been of no use owing to the fact that the scows were immediately allowed to drift away from the dock.

[2] As to what liability, if any, exist between the city and the contractor, I believe the interpretation of the contract in regard to same is not a question for a court of admiralty to determine, as it is not connected with the loading or unloading of scows or other matters maritime in their nature. Accordingly I fail to find in the evidence anything which justifies holding the Manhattan Ash Removal Corporation in this case.

Coming to the case against the city of New York:

It was stipulated that the damage to the scow was not the result of ordinary wear and tear. It is plain that libelant for a number of years has been the largest dealer in scows with the city, and it is not unreasonable to find that libelant knew the usual and ordinary risks which its scows were exposed to from fire in carrying these great loads of inflammable rubbish, ashes, etc. In fact no witness seemed to be surprised at fire thereon, nor did any one suggest exactly how it could be avoided.

[3] It needs no citation of authorities to support the statement that the ordinary contract of hiring creates the relation of bailor and bailee, and does not make the latter an insurer, but liable, primarily, for its own negligence, and, secondarily, when the negligence is that of another to whom the vessel has been intrusted by the bailee.

There is nothing so far as the contractual relation between libelant and the city is concerned that appears here to be other than the above ordinary relationship.

On the trial and the final argument, I was somewhat impressed with the argument of the city that possibly libelant had assumed the risk of damage by fire on its boats. This, however, is really a matter of reading into the contract existing a new clause. There is sound authority that any such agreement must convincingly appear in the evidence.

On the proof here, I do not think that this can be done. It seems to me that it would be just as easy to read into the contract an agreement that the city would be responsible for the loss as that libelant should stand it. Both parties appeared to have equal knowledge of conditions, and fires on the boats are at least not unusual. Possibly this matter might be adequately taken care of by insurance; the premium being divided or considered in the hiring charge. The clearness required of any such agreement, expressed or implied, to assume the risk, does not appear. This leaves the liability of the city, if any, resting on negligence.

[4] The burden of proving such neglect rested on libelant. In exceptional cases, the proof alone of the cause of the injury supplies a sufficient basis for a prima facie case of negligence, but ordinarily negligence must be proved by other surrounding facts and circumstances.

[5] When this case is stripped down, it becomes one simply of a scow loaded with rubbish being burned by a fire originating in its load. The fire started on the scow. The libelant had one of its men in charge of the scow. The city was not an insurer, and there is no proof that any reasonable steps as to loading, etc., were neglected, or that, even with the exercise of due care, occasional fires in the rubbish can be prevented.

Water might have put out this fire. Did the city neglect to put on the water? This was really the basis for the claim of negligence. There was some water at hand, with hose, etc., possibly an adequate supply and apparatus. Libelant's man in charge and other employees of libelant united in their acts in making it impossible for this water to be used. Was their act one in extremis? I do not think so. It does not seem that the line should be drawn too fine where libelant seeks to fasten its loss on the city by reason of the latter's failing to put adequate water on the fire. I cannot speculate as to whether or not such water supply and apparatus as were plainly present was inadequate, where it never was given a chance to be used.

However, whether this act of libelant's employees was an error of judgment or not, it is still a fact which cannot be overlooked in deciding whether libelant has proved by a preponderance of evidence that the city was careless.

The question of adequacy of the water supply was prevented from being tested, and I fail to see how I can hold that the city was liable for negligence under the circumstances, simply because a fire boat did not arrive in time, any more than a case of a tardy arrival of a fire engine in the city.

The mere proof of damage by fire under all the circumstances here was not sufficient to show negligence. It required an explanation from defendant. The burden of proof remained on libelant. The libelant has failed to prove a case of negligence by a fair preponderance of evidence against the city.

Libel is dismissed against both respondents, and the petition of the city impleading the Manhattan Ash Removal Corporation is also dismissed.