### SHAMROCK TOWING CO., Inc., v. CITY OF NEW YORK et al.

Circuit Court of Appeals, Second Circuit. May 6, 1929.

No. 303.

L. Hand, Circuit Judge, dissenting in part.

Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney, of New York City, of counsel), for appellant Flannery Towing Line.

George P. Nicholson, Corp. Counsel, of New York City (Charles J. Carroll, of Brooklyn, N. Y., and William A. Walling, of New York City, of counsel), for appellant city of New York.

Single & Single, of New York City (Wm. J. Mahar, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge. Appellee recovered below for damages to its scow Green Bay, which, while loaded with city ashes and rubbish, caught fire and burned. This scow, with the city's department of street cleaning scow No. 56, was in tow of the tug Joseph J. Flannery, owned and operated by the appellant Flannery Towing Line, Inc., and both were loaded, having received their cargo at the Stanton street dump at 6:10 on the morning of April 15, 1926. The ashes were wet down by sprinkling water, with a hose, on the entire load when loaded, and again on the morning of April 16th. A tally clerk, who kept a record of the truckloads of ashes and rubbish received at the foot of the ramp leading up to the dumping board when the scows were loaded, testified that he looked at each load as it came on, kept a record of the classification of the material and the yardage, and that there were no burning ashes loaded. The fire broke out on the No. 56. The captain testified that he went aboard about half past 6 on the morning of April 17th; that he had no fire in the cabin stove; that he walked over the load from stern to bow, and saw no evidence of smoke or fire. About 11:20 a. m. on April 17th, the tug Joseph J. Flannery took the No. 56, the Green Bay, and the No. 12 in tow and proceeded up the East River, where they were to pick up another scow at the Forty-Sixth street dump. While engaged in clearing the deck of boxes preparatory to taking a line from another vessel, he was told by the captain of the No. 12 that the No. 56 was on fire. On looking up, he saw the fire in the center of the load and he fled to the No. 12. Several tugboats played streams of water on the fire, but the flames were blown over to the Green Bay by a northwest wind blowing about 45 miles an hour, starting a fire on her and causing the damage. It was not shown what caused the fire on the No. 56, and the evidence merely states its discovery and the place where it started. Care was exercised, as was the custom, to wet down the ashes, because it is known that live coals sometimes appear in the ashes.

The city of New York was held liable below for negligence in caring for the ashes when loaded and in some unnamed way failing to prevent a fire. The Joseph J. Flannery was held at fault upon the theory that, when the fire broke out, the tow was going up the East River, and upon discovery, when alarm whistles were blown, and when the Green Bay was not afire, the Joseph J. Flannery turned about and headed down stream, passing the Green Bay to the windward of the No. 56, and a strong west wind carried the fire over to the Green Bay, causing the blaze. In the absence of proof of a negligent cause, the city of New York was not responsible. O'Brien Bros. v. City of New York et al. (D. C.) 7 F.(2d) 485, affirmed 7 F.(2d) 488 (2d C. C. A.). The city of New York was not an insurer, but liable primarily only for its own negligence, and secondarily when the negligence was shown to be that of another to whom the vessel has been intrusted by the bailee. Mere proof that fire occurred is not sufficient upon which to base negligence. The appellee failed to sustain the burden it had of establishing the cause of the fire and that such cause was a negligent one, for which this appellant was responsible. Hildebrandt v. Flower Lighterage Co., 277 F. 438 (2d C. C. A.) affirming (D. C.) 277 F. 436.

Nor did the contract of hire between the city of New York and the appellee stipulate that the city was an insurer. The contract dated December 4, 1924, submitted by the city of New York, provided:

"Neither the city of New York nor this department will be responsible for the damages to the scow resulting from the negligence of the owner's employees in charge thereof or for damages resulting from fire or for damages resulting from causes beyond its control."

To it the appellee replied:

"Replying to your agreement of December 4, 1924, relative to scow hire is hereby returned, as it cannot be accepted by us.

"Pending adjustment of same we will hold the city of New York liable for all damages to our scows while under your charter.

"Our scows to be returned to us as per incoming survey; that is, to be returned to us in the same condition as when received, ordinary wear and use excepted."

Thus it appears that the city's proposal to relieve itself from liability for damages resulting from certain negligence, from fire regardless of its cause, and "for damages resulting from causes beyond its control," was rejected in the reply by the appellee. When the city retained the scow in its service after receiving the appellee's letter, the bailment became subject to the terms of that reply. Shamrock Towing Co. v. City of New York, 16 F.(2d) 199 (2d C. C. A.). This reply should be read as a whole, to determine the intention of the parties, and due effect given to each paragraph as modifying or limiting any other. 6 R. C. L. 227. Considered in this way, it is apparent that the second paragraph does not impose an insurer's liability, but is rather the assertion of an intention to hold the city liable for such damages as would follow as a matter of law, unlimited by such an express agreement as the city had proposed. The last paragraph contains the gist of the temporary arrangement under which the scow was retained by the city, and furnishes the basis for the determination of its liability. By the terms of acceptance, the city did not become an insurer, but was liable only if negligent. The scow was to be returned in the same condition as when received, ordinary wear and tear excepted. A covenant to insure is not implied, and can only be imposed where it is found in an agreement by clear and explicit language. Wan-

dell v. New Haven Trap Rock Co., 285 F. 339 (2d C. C. A.); Mulvaney v. King Paint Mfg. Co., 256 F. 612 (2d C. C. A.).

The Flannery Towing Line should likewise be exonerated. There is no evidence to justify the claim of negligence in the navigation and care of the scow after the fire started. The Joseph J. Flannery signaled for assistance and did all that could be expected of it under the circumstances. The maneuver of the tug was not an improper one. The master acted in extremis and was free from any negligence.

Decree reversed, with costs.

L. HAND, Circuit Judge (dissenting). I agree that it is settled, certainly in this circuit, and probably elsewhere, that a covenant to return a vessel, "reasonable wear and tear excepted," imposes no added liability on the bailee. He may be charged only for his negligence. Whatever be the justification for giving no effect to such language, the rule is now too well settled to question it any longer. Therefore, if the libelant's letter had stood alone and had contained only the last paragraph, I should agree that the city of New York was not liable without proof of negligence. But it was preceded by this language: "We will hold the city of New York liable for all damages to our scows while under your charter." I cannot see any substantial difference between that and the language construed in Sun P. & P. Ass'n v. Moore, 183 U. S. 643, 22 S. Ct. 240, 46 L. Ed. 366. It is true that there the vessel had been valued, and that to the extent of that valuation the charterer agreed to give security for any loss which might happen. Nevertheless, although the court regarded this as fortifying its conclusion, it would have reached the same result without the addition. Pages 655, 656 (22 S. Ct. 240).

Besides, the libelant's letter does not stand alone. The city, on December 4th, tried to get the owner to accept the risk of fire, and the owner expressly refused. Instead, it insisted that the city should be liable for all damages to the scows. Our decision, therefore, imposes upon the owner exactly that burden which he refused to assume, and gives the city the exoneration which it could not secure. By what reasoning this result can be reached I do not see.

I think that the city is liable, but I agree that the tug is not.