## UNITED STATES LIGHTERAGE CORPORATION v. PETTERSON LIGHTERAGE & TOWING CORPORATION et al.

### THE JANE ANNE.

No. 16411.

District Court, E. D. New York.

May 4, 1943.

Thomas A. McDonald, of New York City, for libellant.

Macklin, Brown, Lenahan & Speer, of New York City (Paul Speer, of New York City, of counsel), for respondent.

Purdy & Lamb, of New York City (Edmund Lamb, of New York City, of counsel), for respondent-impleaded.

CAMPBELL, District Judge.

National Operating Company, Incorporated, was, on the petition of the Respondent Petterson Lighterage & Towing Corporation, impleaded under the 56th Rule in Admiralty, 28 U.S.C.A. following section 723.

On or about September 26, 1941, the libellant, by verbal charter, chartered to the respondent the scow "Jane Anne", on the usual terms of the ordinary harbor charter prevailing in New York Harbor, the libellant to employ and pay a captain for said scow. Under such a charter, the respondent was bound to return the scow to the libellant in the same condition as when delivered to the respondent, ordinary wear and tear excepted.

On or about the 26th day of September, 1941, the libellant delivered the said scow "Jane Anne" to the respondent, and at that time the said scow was tight, staunch, strong, and seaworthy, and properly manned and equipped.

At the time the said scow "Jane Anne" was returned to the libellant, it was not in the same condition as when delivered to the respondent, but was in a damaged condition, which damages were not the result of ordinary wear and tear.

At the opening of the trial, the Proctor for the libellant stipulated that the libel does not cover the damage on the stern, and port side, of the scow "Jane Anne", as shown on the survey of October 14, 1941.

On the morning of September 29, 1941, the scow "Jane Anne" was lying partly loaded at the outer end of the north side of Pier 28, East River.

At about 9.45 o'clock on that morning, the agents, servants, and employees of the respondent-impleaded, who were stevedores, or longshoremen, and engaged in discharging the S. S. "Sines", in the absence of the Captain of the scow "Jane Anne", shifted said scow "Jane Anne" from her position alongside the end of the north side of the Pier 28, into the slip on the south side of said pier, and moored the said scow, in the same position in which she had previously been, outside of two other boats, the steam lighter "Lumber Jack", and the scow "Frederick Starr No. 1", which were moored alongside the S. S. "Sines", which in turn was lying bow in on the south side of Pier 28, East River.

The scow "Frederick Starr No. 1" was lying bow in the slip toward the bow of and alongside the S. S. "Sines". The steam lighter "Lumber Jack" was lying bow out toward the stern of the said S. S. "Sines".

The scow "Jane Anne" was moved in by hand by the stevedores, or longshoremen, employed by respondent-impleaded, and made fast by them bow out, with her stern overlapping the stern of the "Frederick Starr No. 1", by about three to four feet, and her bow was made fast to the "Lumber Jack". The "Jane Anne" was partly loaded with cork from the steamer, and loading was to be continued.

There is a sharp conflict in the evidence as to whether the stevedores or longshoremen remained on board the "Jane Anne", but I find that they did for a time, and that one of the stevedores, or longshoremen, was tending the stern line and 5 or 6 of them were gathered together between the after end of the cargo, which was loaded on deck and the forward end of the cabin, a space of three or four feet.

There was smoking going on, two of them had cigarettes, and one was seen to knock off the lighted end of a cigarette.

A stevedore came behind the Captain of the steam lighter "Lumber Jack", and hollered in Italian, and they all scooted.

Some time thereafter, the exact time being in dispute, and there always being a dispute as to estimated lengths of time, but, probably in excess of twenty minutes, a fire broke out in the scrap which fell from the cork piled on deck, and ran up the piles, and caused considerable damage to the "Jane Anne". While attempting to push the "Jane Anne" in subduing the fire, the New York City fireboat brought the starboard stern of the "Jane Anne" into

contact with the "D.P.W. No. 7", a boat lying on the north side of Pier 27, and if damage was caused to the "Jane Anne" thereby it may be shown before the Commissioner to be appointed herein, and no award for such damage, if any, shall be allowed in this case.

No one, it is true, saw the fire start, and its cause was then unknown, but, after investigation, all other causes being eliminated, the only reasonable inference to be drawn from the evidence was, that the fire started where the stevedores, or longshoremen, had been seen smoking, and was caused by such smoking.

Of course, the libellant having shown that the scow "Jane Anne" was delivered by libellant to respondent in a seaworthy condition, and was returned by the respondent to the libellant in a damaged condition, the burden would rest upon the respondent of going forward and showing that such damages did not result from its negligence, or the negligence of one to whom it entrusted the scow.

Of course fires do arise from many causes, not all capable of being ascertained, and therefore, conceding respondent's contention, that the mere happening of a fire without any showing that it resulted from negligence, does not make out a prima facie case. O'Brien Bros. v. City of New York, D.C., 7 F.2d 485; Shamrock Towing Co. v. City of New York, 2 Cir., 32 F.2d 684; Warren & Arthur Smadbeck v. Heling Contracting Corp., 2 Cir., 50 F.2d 99; Southern R. Co. v. Prescott, 240 U.S. 632, 36 S.Ct. 469, 60 L.Ed. 836.

That is not the situation here, as the libellant has shown an explanation as to the origin of the fire, and evidence tending to show that it was within the power of the respondent-impleaded to have avoided its occurrence, by the exercise of reasonable care.

The respondent entrusted the scow "Jane Anne" to the stevedores for loading, and, even if that were not so, the stevedores, their agents, servants or employees, took the scow in the absence of its Captain, and shifted her to the berth alongside the S. S. "Sines", outside of the "Frederick Starr No. 1", and the "Lumber Jack". Having taken the "Jane Anne" without her Captain, the burden rested upon the respondent-impleaded to properly care for the "Jane Anne".

One of the first duties of the respondent-impleaded, was to see that there was no smoking by the stevedores, or longshoremen, aboard.

This, it failed to do, and the respondent-impleaded can not relieve itself from the results of smoking by the stevedores, or longshoremen, on the ground that it was an individual act, outside the scope of their authority.

The stevedores were engaged in the business of the respondent-impleaded, and the smoking was simply a violation of regulations, which should not have been permitted by the respondent-impleaded, and for which it is liable.

The following cases, cited on behalf of the respondent-impleaded, are distinguished on the facts, and are not in point: Mott v. Consumers' Ice Co., 73 N.Y. 543; Connor v. Benenson Realty Co., Co.Ct., 152 N.Y.S. 700; Ford v. Grand Union Co., 268 N.Y. 243, 197 N.E. 266.

The Captain of the "Jane Anne" was not present, and the agents, servants and employees of the respondent-impleaded, who were called as witnesses, especially the stevedores, or longshoremen, who were on the "Jane Anne", all have an interest, because if the fire originated from smoking by the stevedores, or longshoremen, aboard the "Jane Anne", they would be subject to blame.

The agents, servants and employees of the respondent-impleaded are all more or less interested witnesses, as a finding against the respondent-impleaded must be based on their fault.

Edward Ernst, Captain of the steam lighter "Lumber Jack", had ample opportunity to observe what took place on the "Jane Anne" preceding the out-break of the fire, and at the time of the fire, and is an entirely disinterested witness, and I have given his testimony, as I believe it should be given, great weight.

On all the facts proven, the inescapable inference must be drawn, that the fire in question resulted from the smoking by the stevedores, or longshoremen, on board, and it is clearly shown that the agents, servants, or employees of the respondent-impleaded, were smoking in close proximity to the place on the scow "Jane Anne" where the fire occurred, about long enough before the fire attracted attention, to have permitted it to kindle and break forth.

■ The respondent-impleaded was guilty of negligence in allowing its agents, servants, or employees, to smoke where they did, on said scow, and are primarily liable for the damages caused to the "Jane Anne", by said fire, and the respondent is secondarily liable.

A decree should be entered in favor of the libellant in accordance with this opinion, against the respondent-impleaded as primarily liable, and against the respondent as secondarily liable, with costs, and the usual order of reference.