**UNITED STATES LIGHTERAGE CORPORATION v. PETTERSON LIGHTERAGE & TOWING CORPORATION et al.**

**THE JANE ANNE.**

No. 297.

Circuit Court of Appeals, Second Circuit.

April 26, 1944.

198

See, also, 45 F.Supp. 754.

Purdy & Lamb, of New York City (Edmund F. Lamb and Thomas J. Irving, both of New York City, of counsel), for appellant National Operating Co., Inc.

Thomas A. McDonald, of New York City, for libellant-appellee.

Before AUGUSTUS N. HAND, CLARK, and FRANK, Circuit Judges.

PER CURIAM.

The libellant chartered the Deck Scow "Jane Anne" to the respondent Petterson Lighterage & Towing Corporation under the ordinary New York Harbor charter terms, whereby libellant was to pay for the bargee and the charterer was to pay a specified price per day for the vessel. The "Jane Anne" when delivered was tight, staunch and strong, but when she was returned a few days later had been damaged by fire. Thereupon the libellant filed its libel against the charterer to recover for the damage to the barge, and the latter brought the National Operating Company into the suit under the 56th Rule in Admiralty, alleging that the fire and resulting damage was caused by the negligence of stevedores employed by the National Operating Company which was engaged in unloading cargo from the Steamship "Sines" upon the barge "Jane Anne". The District Court, 51 F.Supp. 96, held the National Operating Company primarily, and the charterer secondarily, liable for the damage to the barge, which was caused by the fire, and granted a decree for the libellant accordingly. National Operating Company has appealed from the decree, and Petterson Lighterage & Towing Corpora-

tion has filed assignments of error. We think the decree was right and should be affirmed.

The "Jane Anne" partly loaded with cork from the Steamship "Sines" was shifted by employees of the National Operating Company from the outer end of the north side of Pier 28 in the East River into the slip on the south side of the pier and moored outside of other barges, which were receiving cargo from the "Sines". The "Jane Anne" was shifted by the stevedores for the purpose of continuing her loading. One Edward Ernst, a witness called by the libellant, testified that he saw two of five or six stevedores, who were on the "Jane Anne", smoking cigarettes and that he saw one of the two, who was only about 45 feet away from the witness, "holding the cigarette in (his) hand (and) clipping the lighted part with (his) thumb", or, as the witness put it, "knocking the light off the end". The two men were at the time standing with the other stevedores between the after end of the cargo of cork, which was loaded on the deck of the barge, and the forward end of the cabin. After about twenty minutes a fire started near that spot and spread into the cargo. The fire was finally extinguished, but only after it had done considerable damage to the barge. Witnesses called by the National Operating Company denied that the men were smoking cigarettes, but the trial judge believed Ernst, and we cannot say that his belief lacked any substantial basis. The question of the credibility of Ernst's story about the cigarettes was one for the trier of the facts. The conclusion of the judge was strengthened by testimony that the barge's "stove had no fire in it and there was no oil lanterns burning to cause a fire." There would seem to be no reasonable way of accounting for the damage other than that it originated from careless smoking.

The respondent's criticism of the decree is chiefly that the smoking of the stevedores, even if it was the cause of the fire, was an act outside the scope of their employment by the National Operating Company, and hence was not a ground for imposing liability upon their employer.

What the "scope of employment" of such workmen as the stevedores really is has long been a vexed question. In spite of a conflict in the authorities we think that the better reasoned decisions hold the

master liable for acts of his servant, whether in excess of authority or contrary to instructions, where the acts are performed in the course of his employment and the master knows or should know that such acts are likely to be performed and that damage to others is likely to happen as a result. Liability was imposed on employers for damage caused by employees through smoking under circumstances where there was likelihood of resulting damage in Maloney Tank Mfg. Co. v. Mid-Continent Petroleum Corp., 10 Cir., 49 F.2d 146; Wood v. Saunders, 228 App. Div. 69, 238 N.Y.S. 571; Jefferson v. Derbyshire Farmers Ltd. (1921), 2 K.B. 281, and Palmer v. Keene Forestry Association, 80 N.H. 68, 112 A. 798, 13 A.L.R. 995. See Restatement Torts, § 317; also compare Adams v. Southern Bell Telephone & Telegraph Co., 4 Cir., 295 F. 586.

It is plain that workmen like the stevedores here are likely to smoke unless restrained and that cigarette smoking and the dropping of cigarette ashes in scrap fallen from a pile of cork loaded on a barge were likely to set fire to the cargo and damage the barge. The conclusion reached by the District Court was founded on inferences reasonably derived from the evidence and seems fully justified.

The interlocutory decree is accordingly affirmed.