## THE CARBON LIGHT.

### O'BRIEN BROS., Inc., v. UNITED STATES et al.

District Court, S. D. New York.
June 5, 1946.

Foley & Martin and Christopher E. Heckman, all of New York City, for petitioner.

John F. X. McGohey and John F. Quarto, both of New York City, for respondent.

Macklin, Brown, Lenahan & Speer and Gerald J. McKernan, all of New York City, for respondent impleaded.

RIFKIND, District Judge.

There is no question of the liability of the respondent United States. The only issue which requires discussion is whether the impleaded respondent, Turner and Blanchard, Inc., is liable. I have concluded that it is and for the following reasons. The facts are briefly these:

Petitioner, owner of the scow Carbon Light, delivered the scow ·to the United States under an oral charter, the United States agreeing to accept the scow without a captain, to be responsible for tending and watching it and not to load it beyond 250 tons.

Before Turner and Blanchard, Inc., commenced loading, it knew that no captain was aboard the scow to tend her or to man her pumps. The loading was done carefully and skillfully. At all times during the loading the scow had plenty of freeboard, showed no list and at the end of the day she was somewhat lower at the stern than at the bow as was customary and proper. Shortly after the stevedores left for their meal at midnight, when the scow had aboard her less than 250 tons of dry sand ballast, she capsized and was damaged.· What had happened, according to the best opinion produced at the trial, was .that the scow had taken water during the loading and when this reached a height above the keilsons running along the bottom of the scow the water became uncontrolled, free to move in any direction. Movement in one direction caused the vessel to overturn.

■ Since there was no captain on board, did the duty devolve upon the stevedores to check for leakage and, when necessary, to man the pumps?[1] I believe the question should be answered in the affirmative.

The scow was thirty years old and had hand pumps aboard sufficient to care for ordinary leakage. There was uncontradicted testimony that all wooden scows leak and that the leakage generally increases when a scow is loaded. This was known or should have been known to the stevedores. Immediately preceding the actual loading operations, the stevedore's superintendent of operations became aware of the absence of a captain on board the scow and reported such fact to an army officer. Nothing more was said and nothing more was done to remedy the situation. The stevedore took no measures to ascertain the extent of the leakage. It made no provision for manning the pumps which were aboard. It relies now for exoneration upon the fact that it reported the absence of a captain to the charterer. There is no testimony, however, that any agent of the United States undertook to supply the deficiency. .

■ Under the circumstances the stevedore had three choices. It .might have refused to load the untended scow; it might have manned the pumps through its own employees; it might have exacted from the owner or the charterer an undertaking to hold it harmless. It did none of these.

Counsel for the stevedore argues that no

---

[1] Respondent's petition to implead the stevedore alleged negligent loading as the cause of the damage. However, the issue upon which the decision turns was tried and argued without objection. Federal Rules of Civil Procedure, rule 15(b), 28 U.S.C.A. following section 723c.·

reported case has held a stevedore liable for failure to pump a scow which gave no evidence of distress, such as list. It does admit that a stevedore will be held responsible for continuing to load a scow after evidence of distress or a decided list has developed. The existence of such responsibility, which the stevedore admits, rests, of course, upon a breach of some duty and the question in the instant case narrows down to whether that duty had been called into play by the absence of a captain. The cases support the principle from which a finding of the existence of a duty and its breach in the instant case is derived. In McGeeney v. Moran Towing Corp., 2 Cir., 1945, 149 F.2d 791, respondent, the charterer, had agreed to furnish the impleaded respondent, a stevedoring corporation, with scows necessary to effect the discharge of wet sand ballast from a steamship. Respondent sent a scow which was already partly loaded with dry sand derived from another ship, and the stevedore deposited the wet sand ballast thereon. The scow capsized. The court said at page 793: "Maritime was not only a stevedoring company employed by Moran to do its stevedoring, but was a company having special experience in discharging sand ballast. If, as has been argued, the piles of sand on the scow when she came alongside the ship, were too high and likely to slide under the pressure of an additional load of heavy wet sand, Maritime should either have declined to begin loading a vessel in that condition or should have trimmed the scow by using shovels. * * *"

The court held the stevedore primarily liable to the owner, and the charterer secondarily liable.

In U. S. Lighterage Corp. v. Petterson L. & T. Corp. (The Jane Anne) D.C.E.D. N.Y.1943, 51 F.Supp. 96, affirmed 2 Cir., 1944, 142 F.2d 197, the libellant, as owner, chartered a scow to respondent, the libellant to employ and pay the captain. The stevedore, in the absence of the captain of the scow, shifted the scow from one side of the pier to the other for purposes of continuing her loading. A fire broke out as a result of smoking by the stevedore's employees and the scow was damaged. The trial court said at page 98 of 51 F. Supp.: "The respondent entrusted the scow 'Jane Anne' to the stevedores for loading, and, even if that were not so, the stevedores * * * took the scow in the absence of its Captain, and shifted her. * * * Having taken the 'Jane Anne' without her Captain, the burden rested upon the respondent-impleaded [the stevedos] to properly care for the 'Jane Anne.' One of the first duties * * * was to see that there was no smoking by the stevedores, or longshoremen, aboard."

In Exner Sand & Gravel Corp. v. Gallagher Bros. S. & G. Corp. (The Henry E.) D.C.E.D.N.Y.1945, 61 F.Supp. 327, where a dredging corporation loaded a scow, which was under charter, with a full cargo of sand and gravel, knowing that there was no captain on board the scow to make proper provision for pumping out water from the wet cargo, and by reason whereof the scow overturned, the court held the dredging corporation primarily liable and the charterer secondarily liable. The court said, at pages 328, 329 of 61 F. Supp.: "They [the dredging corporation] knew the facts, i.e., they knew that the Henry E. was unattended; they knew the cargo capacity and also that a wet sand and gravel cargo would lead to drainage of water and consequent pumping. Nevertheless they proceeded with the loading operation * * * and they failed to keep the scow pumped. Those faults establish primary liability * * *."

Although the facts in the cited cases are stronger for the imposition of liability upon the stevedore, nevertheless, I think the principle they establish is applicable to the instant case. In conducting a loading operation without regard for its physical requirements and effects, the stevedore subjected itself to liability for the consequent damage, Seaboard Sand & Gravel Corp. v. American Stevedores, Inc., D.C.E.D.N.Y., 1945, 59 F.Supp. 975, 977, affirmed 2 Cir., 1945, 151 F.2d 846.

The impleaded respondent is adjudged primarily liable and the respondent secondarily liable.