THE O'LEARY.

THE BARGES NOS. 6, 9, AND 10.

LAVINO SHIPPING CO. v. THE
O'LEARY et al.

No. 149 of 1945.

District Court, E. D. Pennsylvania.
Nov. 6, 1947.

Thomas F. Mount, of Philadelphia, Pa.,
for libelant.

Howard M. Long, of Philadelphia, Pa.,
for respondent.

BARD, District Judge.

This is a suit to recover the value of
stevedoring services furnished by the libel-
lant to the respondent in loading a quan-
tity of stone. The respondent, by way of
cross-libel, seeks to setoff against libellant's
claim the asserted value of libellant's serv-
ices in connection with a portion of the
stone which was lost when the barge on
which the libellant had loaded the stone
capsized.

On the basis of the pleadings and the tes-
timony adduced at the trial of this cause,
I make the following special

Findings of Fact:

1. On September 12, 1944, the respond-
ent Joseph Magistrelli entered into a con-
tract with the United States of America to
furnish certain stone to be used as a foun-
dation for the construction of a dike in the
Delaware River, and also to transport such
stone to the scene of the work and lay it
in the river.

2. On October 3, 1944 the libellant and
the respondent entered into a contract
whereby the libellant agreed to discharge
approximately 10,000 tons of stone onto
lighters and barges to be furnished by the
respondent at the Wilmington, Delaware,
Marine Terminal. Under the terms of
said contract, the respondent agreed to pay
to the libellant 55 cents per gross ton, or
49.107 cents per net ton, for discharging
this stone.

3. Respondent also associated with him
Thomas Earle and Son, Inc., whose duty it
was to furnish the lighters and barges for
the transportation of the stone, furnish a
tug to tow the barges and lighters to the

scene of the work, and to discharge the stone at the scene of the job.

4. Thomas Earle and Son, Inc., chartered from the General Contracting Company several barges, including the Barge No. 10, whose maximum safe load limit was 300 tons.

5. Thomas Earle and Son, Inc., also engaged a tug boat owned and operated by Captain Harry E. Chance. Under the agreement between Thomas Earle and Son, Inc., and Captain Chance, the latter was to tow the loaded barges from the Wilmington Marine Terminal to the scene of the work across the Delaware River, and to bring back from the scene of the work to the Marine Terminal the empty barges and place them in position for loading alongside the wharf. It was also Captain Chance's responsibility to tend the lines of the barges and to see that they were pumped out when necessary.

6. Under the contract between the respondent and the United States Government, it was required that a government inspector be present at the Wilmington Marine Terminal when the stone was unloaded from the freight cars and placed onto the barges by the libellant. It was the duty of this government inspector to assure that the stone furnished was in accordance with specifications, and that it was taken from the freight cars and actually loaded onto the barges.

7. The work proceeded satisfactorily up to and including Saturday, November 11, 1944. On that day, the libellant commenced loading the Barge No. 10, and by the end of the working day approximately 75 tons of stone had been loaded onto that barge.

8. On Sunday, November 12, 1944, in the absence of a representative of the respondent, in the absence of a representative of Thomas Earle and Son, Inc., in the absence of the government inspector, and in the absence of Captain Chance, the tug master, the libellant proceeded to finish loading the Barge No. 10 to a total of approximately 282 gross tons of stone.

9. The loading done on Sunday, November 12, 1944 was carried out in a proper and workmanlike manner, and when the libellant's foreman left the Marine Ter-

minal at the end of the working day, the lines to the Barge No. 10 were properly secured, both to the barge and to the wharf. The libellant's foreman left sufficient slack in the mooring lines to allow for the expected fall in the tide.

10. On the morning of November 13, 1944, when the employees of the libellant returned to the Marine Terminal, they discovered that the Barge No. 10 had capsized, dumped her cargo, and drifted up the river from the wharf.

11. The cause of the capsizing of the Barge No. 10 is not established by the evidence.

12. Between October 11, 1944 and December 17, 1944 the libellant discharged 10,407.7 net tons of stone in pursuance of its contract with the respondent, which amount includes the 282 tons which were lost when the Barge No. 10 capsized. Under the terms of the contract, the libellant was entitled to be paid the sum of $5,108.45 for discharging the 10,407.7 tons of stone. The respondent has paid on account the sum of $1,964.29.

### Discussion.

The sole issue presented to the Court in this case is whether the libellant stevedoring company is entitled to be paid for its services in loading the 282 gross tons of stone which were lost overboard when the Barge No. 10 capsized. The respondent in its answer and cross-libel also asserted several other claims against the libellant, but has specifically disavowed these other claims as a result of the evidence adduced at the trial.

The respondent resists payment of the stevedoring charges with respect to the stone which was lost, on the ground that the capsizing of the Barge No. 10, and the consequent loss of the stone which had been loaded on her, resulted from negligence on the part of the libellant.

■ It is true that a stevedoring company will be liable if it loads a barge under circumstances which it knows, or should know, will place the barge in a perilous position unless affirmative action is taken to eliminate the peril, and the stevedore, knowing or having reason to know that no one else will take such action, fails to take

such action himself. The Carbon Light, D.C., 66 F.Supp. 292; Exner Sand & Gravel Corporation v. Gallagher Bros. Sand & Gravel Corporation, D.C., 61 F.Supp. 327, affirmed F. E. Grauwiller Transportation Co. v. Exner Sand & Gravel Corp., 2 Cir., 162 F.2d 90, 1947 A.M.C. 882. It is likewise true that a stevedore is under a duty to refrain from committing affirmative acts of negligence during the course of the loading operation. United States Lighterage Corporation v. Petterson Lighterage & Towing Corporation, D.C., 51 F.Supp. 96, affirmed 2 Cir., 142 F.2d 197.

In the instant case, there is no evidence to sustain a finding that the employees of the libellant committed any acts of negligence in loading the Barge No. 10 on Sunday, November 12, 1944; nor is there any evidence that the loading was performed under circumstances which would place the barge in a perilous position. The evidence on these points is all to the contrary. The total load placed on the barge was within the established maximum safe limit; the cargo of stone was properly trimmed; and when the libellant's employees left the barge at the end of the working day, the mooring lines were tightly secured both to the barge and to the wharf, with sufficient slack in the lines to allow the barge to fall with the anticipated ebb tide. The libellant's foreman checked the barge for leakage and found that she had taken approximately four inches of water. There is no evidence that this amount of water was excessive, or that it was sufficient to create a danger of the barge's capsizing during the ensuing night.

The respondent places great emphasis on the fact that the libellant undertook to load the Barge No. 10 on Sunday, November 12, 1944 in the absence of the representative of the respondent, in the absence of a representative of Thomas Earle and Son, Inc., in the absence of the government inspector, and in the absence of Captain Chance, the master of the tug. However, it must be borne in mind that the cause of the capsizing of the Barge No. 10 has not been established. Therefore there is no basis for a finding that the absence of any or all of the parties mentioned was a legal cause of the capsizing of the barge. In view of the fact that the respondent has failed to establish any causal relationship whatever between the absence of these parties and the capsizing of the barge, the reason for these parties' absence becomes immaterial.

My conclusion is that the respondent has failed to establish fault on the part of libellant in connection with the loss of the 282 gross tons of stone which went overboard when the Barge No. 10 capsized. Therefore, the libellant is entitled to be paid its stevedoring charges at the previously agreed rate for loading that quantity of stone.

### Conclusions of Law.

1. This Court has jurisdiction of the subject matter and the parties to this action.

2. The libellant is entitled to be paid for its services the sum of $5,108.45, with interest.

3. The cross-libel filed by the respondent is dismissed with costs.

4. A decree may be submitted in conformity with this opinion.