1052

P. SANFORD ROSS, Inc., v. MORAN TOW-
ING & TRANSPORTATION
CO., Inc., et al.

MORAN TOWING & TRANSPORTATION
CO., Inc., v. P. SANFORD ROSS,
Inc., et al.

Nos. 154, 155.

Circuit Court of Appeals, Second Circuit.

Feb. 1, 1932.

Shearman & Sterling, of New York City,
(Horace M. Gray and P. F. W. Ruther, both
of New York City, of counsel); for appellant.

Alexander, Ash & Jones, of New York
City (Edward Ash, and Lawson R. Jones,
both of New York City, of counsel), for li-
belant-appellee.

Macklin, Brown, Lenahan & Speer, of
New York City (Horace L. Cheyney, of
New York City, of counsel), for appellee
Moran Towing & Transportation Co., Inc.

Before MANTON, AUGUSTUS N.
HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The Astoria Light, Heat & Power Com-
pany made a contract with Moran Towing &
Transportation Company, Inc., under which
the Moran Company agreed to deliver a dump
scow at the Luyster Creek Dock of the As-
toria Company to be loaded with approxi-
mately eight hundred cubic yards of spent
oxide and to tow the scow out to sea where
the oxide was to be dumped. The Moran
Company did deliver a scow at the dock for
this purpose, but it was rejected by Astoria.
Thereupon Moran chartered from the libel-
ant, P. Sanford Ross, Inc., its scow S-40 and
delivered that scow to the dock in seaworthy
condition, where it was accepted and loaded
with more than 800 yards of oxide, but not
with more than the capacity of the scow.
Loading was begun November 17, 1927, and
completed November 19th. While at the
dock, the scow took the ground at low water.
A little before 4 o'clock in the afternoon of
November 19th, the Moran Company's tug
Eugenia N. Moran arrived at the dock to tow
the scow according to the contract. It went
aground, but floated in about an hour on the
rising tide. During this time the scow was
also aground with a slight list offshore. It
had fourteen-foot sides and about three feet
of freeboard when afloat and loaded as it
was. When both tug and scow were afloat,
the tug made fast and towed the scow to the
O'Brien stake boat, where another scow was
picked up and the two taken in tow, tandem,
on a hawser of from 75 to 80 fathoms. The
bargee examined the scow before it left the
dock and made no complaint about its leak-
ing. About 2:00 o'clock the following morn-
ing the tug and tow arrived at the Eatons
Neck dumping ground and signaled to the
S-40 to dump. When it saw that the scow
was not dumping, the tug rounded to and
went alongside to find the bargee asleep and
the scow with a bad and increasing list to
starboard. Although all the pawls were
knocked out, it would not dump. The scow
was then towed to Hempstead Harbor and
grounded on the flats. After unsuccessful at-
tempts to pump her out, a third party was
engaged to raise her, and she was delivered to
the libelant, her owner. When suit for dam-
age to the scow was brought against the
Moran Company, the Astoria Company was
impleaded and held liable for providing a
foul berth.

The evidence concerning the berth dis-
closed that it had a mud bottom with some
cinders intermixed that made it medium
firm. There were no rocks or other obstruc-
tions. As the S-40 lay at the dock, the bot-
tom from her port stern corner rose grad-
ually at mean low water from 6.1 to 9.6 about
60 feet from the bow and then fell gradually
to 7.7. A few feet offshore it rose gradually
from 9.0 at the stern to 10.3 about 60 feet

from the bow and fell gradually to 9.5. It was 9.8 at about the center of the scow at the stern, rose gradually to 10.6 about 50 feet from the bow and fell gradually to 8.8. At the offshore stern corner it was 13.6, fell gradually to 9.9 about amidships and to 8.8 at the bow starboard corner. The scow was 140 feet long and 40 feet wide. It is true as the above discloses that the bottom was somewhat uneven, but it was free of rocks, and, though there were cinders in the mud to make it medium firm, whatever that may mean, there was no evidence to show twisting that would necessarily open her seams or to show that the seams were in fact opened. The slope of the bottom caused the slight list offshore when aground. The tug took her and towed her about ten hours before trouble was discovered. She had been at the dock three days and two nights, during nearly all of which she was at least partially loaded without taking enough water to be noticed by any one before the tug took her in tow. From the fact that she was in damaged condition ten hours later, it is necessary, in order to hold the Astoria Company, to infer that she must have been damaged when she left the dock, because the evidence of the tug was to the effect that nothing was known to have damaged the scow while being towed, and upon that inference to base the conclusion that the Astoria Company was negligent in furnishing a berth it should have known would cause the damage which has not even yet been shown to have actually occurred there. It is elementary that, unless it could be proved that the Astoria Company was negligent, and that its negligence caused the damage, it was not legally to be held liable. Shamrock Towing. Co. v. City of New York (C. C. A.) 32 F. (2d) 684. We think such a method of reasoning to a finding of actionable negligence too far removed from a solid foundation of proved fact to be reliable.

The liability of the Moran Company, however, does not depend upon proof of its negligence. It chartered the scow, received it in good condition, and it failed to redeliver in like condition. It has admitted in answer to an interrogatory that the scow was "in apparent good order and condition at the time she was taken in tow by the tug" at the Astoria Company's dock, and under the charter, which was oral and confirmed by letter, it was "understood you will be responsible for the scow and return in same condition as when taken." The "you" in the above quotation refers to the Moran Company. It is guilty of a breach of its contract, and its liability is clear. Schoonmaker Conners Co., Inc., v. Lambert Transportation Co. et al. (C. C. A.) 268 F. 102, 104.

Decree modified to hold the Moran Towing & Transportation Company, Inc., solely liable.