THE PRIDE.

THE WILLIAM J. TRACY.

SEGRAVE v. McLAIN LINE, Inc., et al.

No. 235.

Circuit Court of Appeals, Second Circuit.

May 10, 1943.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

Macklin, Brown, Lenahan & Speer, of New York City (Leo F. Hanan, of counsel), for appellant.

Hagen & Eidenbach, of New York City, (Henry C. Eidenbach, of New York City, of counsel), for libellant-appellant.

Bigham, Englar, Jones & Houston, of New York City, (Charles A. Van Hagen, Jr., of New York City, of counsel), for respondent-appellee.

Burlingham, Veeder, Clark & Hupper, of New York City, for respondent-impleaded-appellee.

Foley & Martin, of New York City, (Christopher E. Heckman, of New York City, of counsel), for respondent-appellee McLain Line, Inc.

## CHASE, Circuit Judge.

This appeal involves principally the question whether the trial judge's finding of negligent towage by a tug was supported by the evidence.

The libellant, who is the owner of the barge Pride, let her when she was in good order and condition to the McLain Line, Inc. The charter was not a demise; was for an indefinite period from September 16, 1940, at a stated rate of hire; and the boat was to be returned at the end of whatever the term might be in as good condition as received; ordinary wear and tear excepted. She suffered bottom damage while in the service for which she was chartered and this libel was brought by the owner in the District Court for the Southern District of New York against the charterer and the Newark Plaster Company at whose dock it was alleged the boat was injured while lying moored at a berth which was foul. The McLain Line, Inc., impleaded the Pennsylvania Railroad Company who had towed the Pride part of the way to the Plaster Company's dock and it in turn impleaded the tug Tracy which was claimed by her owner the Tracy Towing Line, Inc. That tug had towed the barge the remainder of the way to the dock and left her tied up there.

At the close of the evidence the pleadings were amended at the suggestion of the court so as to allege negligent towage by the tug Tracy while bringing the barge to the Plaster Company's dock. The amended libel against the original respondents, McLain Line, Inc., and Newark Plaster Company and the petition impleading the Pennsylvania Railroad Company were dismissed on the merits. The Tracy was held at fault for negligent towage which was found to have caused the damage to the Pride. This appeal followed.

The Pride, a barge about 102 feet long, was shown to have been in good condition when she left South Amboy, N. J., loaded with 498 tons of coal on the afternoon of September 18, 1940, in tow of the Pennsylvania Railroad Company's tug Baltimore en route to Elizabethport, N. J., where she arrived without incident. She was then taken in tow by the tug Tracy and tied up at the Newark Plaster Company's dock at Newark, N. J., about twelve thirty the next morning. The bargee and the tug's captain both testified that nothing was hit during the trip from Elizabethport to the dock at Newark; that the barge was in good condition when it left there; and there was no direct evidence to the contrary. The Pride was left moored at the dock with lines fore and aft and a spring line from the stem and one from the stern. Her captain sounded; found her dry and went to bed. About four o'clock in the morning he was awakened by some noise and on going upon deck found his boat aground with

some list to starboard which had made about two and one half feet of water in her run over to that side. He started his pump and notified the owner who sent another pump without delay and the two were sufficient to take care of the leakage. The barge lay there with her cargo until the next day when the unloading of a ship moored ahead of her was finished and she could be and was moved into position to have her coal taken off. When she was unloaded she was taken to dry dock and surveyed. Then it was found that some of her caulking needed repair or renewal and that the nineteenth bottom plank from the bow had been pushed up at about the middle of the boat though no other plank had been injured.

Some twenty days after the grounding of the Pride, a diver made a thorough examination of the bottom of the berth for about two hundred feet along the dock and about twenty feet out from it. This included the place where the Pride had lain when moored behind the ship. He felt about on his hands and knees and found only mud which covered the entire bottom and which sloped slightly away from the dock. He did not go deeper into the mud than he could in this way with his hands and in so doing found no stones or hard substances of any kind. His evidence that the berth was safe was fortified by proof that many boats had tied up there for years without damage.

It was also shown that just below this dock and adjacent to it on the south was an unused one of the Public Service Company. The diver went over the bottom of that in the same way for about fifty feet nearest the Newark Plaster Company's property and up to about the same distance off shore. He found a hard bottom for the most part which was littered with debris among which he found a cement building block some 12x12x7 inches in size which was ten or twelve feet out from the pier. He also found the block of an automobile engine and some cobblestones which seemed to have been pushed down into the hard bottom some twelve feet south of the Plaster Company's southern line. He said he found "places that were smoothed off like the top of a table as though something had been sitting on it or dragged over it, like it had been ironed down." There was no evidence, however, showing when such things had occurred.

The tug master testified that when he moored the Pride to the dock at Newark he had her on his port side and pulled up the river against an ebb tide until he had the barge about abreast of the dock. Then he let her "drift easy to the dock" and moored her there on her port side. He testified that when he went up the river he kept about 150 feet off the dock of the Public Service Company and that he moored her behind the ship without getting her south of the southerly line of the Plaster Company's pier. There was a suggestion in the petition impleading the tug Tracy that the latter did not moor the barge wholly north of this southerly line but it was not so proved and the judge did not so find. Nor did anyone testify that the tug master did not navigate where, and as, he said he did.

It was upon this evidence that the trial judge found that the Tracy towed the Pride " * * * through waters not normally used for navigation in dangerous proximity to the unused dock of the Public Service Company which was located to the south of the Newark Plaster Company, thereby coming into contact with submerged obstructions on the bottom opposite the said unused dock of the Public Service Company." He thereupon concluded that this navigation was negligent and accordingly held the tug at fault for the damage to the Pride.

We should, of course, have no quarrel with his conclusion if we could accept the finding as supported by the evidence. But that finding rests only upon a possibility which appears to approach a likelihood in so far as no other cause of the damage was shown and flies in the face of the probability that if the plank was broken when the barge was moving as she must have been when she passed by the dock of the Public Service Company in tow of the Tracy one or the other or both of the planks next to it would have shown some signs of injury. No doubt it was unlikely that the diver missed an obstruction in the mud which might have broken the plank when the barge took the ground at the Plaster Company's dock. However, such thoughts as these but show how much speculation must underlie any attempt on the evidence in this record to attribute the injury to the barge to some specific cause. Accordingly we do not accept the finding that the Pride was injured by being towed dangerously near to the Public Service Company's dock and the conclusion that the Tracy navigated negligently must fall with it.

■ This leaves the libellant without proof of any cause of action. The Tracy was not an insurer of its tow and can be held only if its negligence is affirmatively shown. The Eastern, 2 Cir., 280 F. 711. Since Stevens v. The White City, 285 U.S. 195, 52 S.Ct. 347, 76 L.Ed. 699, it cannot be thought that a tug is the bailee of its tow. See, also, New Orleans Coal & Bisso Towboat Co. et al. v. United States, 5 Cir., 86 F.2d 53.

Some question has been raised as to the propriety of allowing the amendments to the pleadings to conform them to the proof in the manner and at the time that was permitted. In view of the shortage of proof which requires a reversal, we shall assume for present purposes that the amendments were properly allowed.

Decree reversed.