## BALDWIN v. NEW YORK CENT. R. CO.
### et al.
### THE GEORGETOWN.
#### No. 18397.

United States District Court
E. D. New York.

Dec. 8, 1949.

Mahar & Mason, New York City, proctors for libellant. Frank C. Mason, New York City, of counsel.

Gerald E. Dwyer, New York City, proctor for respondent New York Cent. R. R. Co. Harold G. Wilson, New York City, of counsel.

John E. Morrissey, New York City, proctor for respondent Delaware, Lackawanna & Western R. R. Co.

GALSTON, District Judge.

This is a libel in admiralty brought by James Baldwin, as owner of the barge Georgetown, against the New York Central Railroad Company and the Delaware, Lackawanna & Western Railroad Company.

The first cause of action is against the New York Central and alleges the making of an oral charter on or about September 21, 1944 of The Georgetown to the New York Central and delivery pursuant to such

agreement; it alleges redelivery to libellant on or about June 15, 1946, "not in the same good condition as when received, but * * * in a badly damaged condition * * * not the result of ordinary wear and tear."

The second cause of action is against the New York Central and the Delaware, Lackawanna & Western for damages alleged to have been sustained by The Georgetown as a result of a collision between the barge and the Delaware, Lackawanna & Western carfloat No. 40 in tow of the Delaware, Lackawanna & Western tug Newark, at about 8:25 a. m. on December 1, 1945. It is alleged that the collision was caused by the negligence of the New York Central in mooring The Georgetown at a place where it was likely to be damaged, and by the negligence of the Delaware, Lackawanna & Western in that those in charge of the tug Newark failed to navigate with due regard to the safety of The Georgetown.

The libellant's proof of the delivery of The Georgetown to the charterer, the New York Central, in good condition on September 21, 1944, and its redelivery by charterer to libellant in damaged condition on June 15, 1946 is not disputed. Therefore, the charterer, having breached its contract to return the barge in the same condition as when taken, subject to ordinary wear and tear, is liable under the first cause of action. P. Sanford Ross, Inc., v. Moran Towing & Transportation Co., Inc., 2 Cir., 55 F. 1052, certiorari denied 287 U.S. 608, 53 S.Ct. 12, 77 L.Ed. 529.

The testimony concerning the faults ascribed to the respondents is, as usual in these actions, in considerable conflict. There is no dispute that The Georgetown was towed from Pier 57, North River, to Pier 68, North River, on November 30, 1945, and moored on the north side of Pier 68. Nor is it disputed that Pier 68 is leased by the Delaware, Lackawanna & Western for its exclusive use and that The Georgetown was not taken to Pier 68 to pick up or deliver freight, or in connection with any business of the Delaware, Lackawanna & Western. It is not contradicted, either, that the Delaware, Lackawanna & Western

tug Newark was taking the Delaware, Lackawanna & Western carfloat No. 40 to Pier 68 on business of the Delaware, Lackawanna & Western. During the course of the trial the libellant's counsel stipulated that there was a warning sign posted at the river end of Pier 68, which read:

"Private Dock

"Boats Not Allowed To Tie Up Here"

There is, however, substantial dispute as to the number of vessels which were moored at Pier 68 on December 1, 1945, at the time of the collision. The captain of The Georgetown testified that when he came aboard the barge, about seven o'clock on the morning of December 1st, it was moored bow inshore with the stern about twenty-five feet from the pier end, just as he had left it the night before, and the stern was about fifteen feet off the north side of the pier, the bow about twenty-five feet therefrom. He testified that a stern line was made fast to the pier, and a bow line from The Georgetown to the starboard bitt of the New York Central's scow Salem, another vessel moored inshore. He further testified that the New York Central's barge, The Pawling, was tied up outside The Georgetown. The captain of The Salem corroborated the story of The Georgetown's captain.

On the other hand, the crewmen of the Delaware, Lackawanna & Western tug Newark and carfloat No. 40 testified that, before entering the slip on the north side of Pier 68 The Newark stopped to allow another tug to pick up The Pawling, thus leaving The Georgetown as the only boat in the outermost tier of boats. If this was the fact the libellant's case against the Delaware, Lackawanna & Western must fall because damage is alleged as resulting to The Georgetown due to the striking of The Pawling by carfloat No. 40. The crewmen also stated that the next tier of boats inshore from The Georgetown consisted of four barges. The captains of The Georgetown and The Salem remembered only The Salem in this tier.

There also is disagreement as to what contacts were made by carfloat No. 40 as it was being brought into the slip by The

Newark. The captains of The Georgetown and The Salem testified that carfloat No. 40, on the starboard side of The Newark entering the slip, rubbed and dragged along The Pawling's offshore side, causing The Pawling and Georgetown to surge forward, breaking The Georgetown's lines and bringing her starboard bow corner into forceful contact with the corner of The Salem. The collision resulted in damage to the bow of The Georgetown, according to the barge's captain. No damage, however, was sustained by The Pawling or The Salem. The opposing testimony of the captain and crew of The Newark and carfloat No. 40 was that the only contact made by carfloat No. 40 was with the offshore corner at the east end of the outermost barge in the tier of four barges they claimed were moored just inshore of The Georgetown. The contact, as The Newark's captain testified, was deliberate, and " * * * to get a line on him to check my float from hitting the dock." The Newark's captain admitted, upon cross-examination, that from his position on the tug he could not see whether the carfloat came into contact with any barge. The two deckhands who had stations on the starboard side of the carfloat, however, testified they were in a position to see what contact was made. They denied any contacts with The Pawling or The Georgetown. The respondent, Delaware, Lackawanna & Western, contends that any damage suffered by The Georgetown was the result of its pounding and chafing on the corner of The Salem.

Other matters in dispute include the time when The Newark captain was informed of the alleged collision and ensuing damage, whether The Newark captain sent a crew member to inspect The Georgetown's damage, and whether The Georgetown's captain was on the barge at the time of the alleged collision.

It is at least clear that The Georgetown was moored at the Delaware, Lackawanna & Western Pier 68 for the sole convenience of the charterer, and without the authority or permission of the lessee of the pier. There was no demand by the lessee that The Georgetown be moved away. Therefore, the Georgetown must be regard-

ed as a trespasser, or at best a mere licensee. It has been declared that the only duty owed to a trespasser or licensee is not to injure him wilfully. Zanone v. Oceanic Steam Navigating Co., 2 Cir., 177 F. 912; Lauchert v. American S. S. Co. et al., D.C., 65 F.Supp. 703. Libellant does not allege or offer evidence of wilful injury or wanton negligence here.

Respondent, the New York Central, cites The Chancellor, 2 Cir., 30 F.2d 227, at page 228, in which the court stated the fact that a vessel "was a trespasser did not make her an outlaw. For example, vessels were bound to navigate with reasonable care in respect to her. The Westernland, D.C., 24 F. 703; The Lady of Gaspe, 2 Cir., 276 F. 900." It should be noted that the cases cited in the above-quoted passage from The Chancellor, supra, were dealing with the duty owed to a trespasser by a third person, and not the duty owed by the person trespassed upon. In the instant case, the Delaware, Lackawanna & Western was the lessee in sole occupancy of Pier 68 and its movements alleged to have been negligent were directly related to the purpose for which it had leased the pier. Therefore the rule of care stated in The Chancellor, supra, is not applicable in the circumstances of this case.

Even assuming, however, that the Delaware, Lackawanna & Western was under such a duty as set forth in The Chancellor, supra, the evidence presented fails to show a breach thereof. Resolving the conflict in testimony as to the collision in the libellant's favor, it shows only that carfloat No. 40 came into contact with The Pawling. The Georgetown's captain testified that The Newark "swung around with a terrific speed and he hit The Pawling a slanting blow." Upon cross-examination, however, he admitted that he did not see The Newark come into the slip but "seen her after she hit the boat". At another point in the cross-examination he testified that before the collision his attention was directed to the stern of his barge by a boat's whistle, which he presumed was The Newark's whistle. However, from an examination of Exhibit 5—the diagram in which The Georgetown's captain positioned the various vessels, as

well as himself and The Salem's captain at the time of the alleged collision—it is difficult to believe that he was able to see The Newark and carfloat No. 40 entering the slip, to say nothing of the speed or manner in which they were being handled. Both The Georgetown and The Pawling are covered barges; and the angle at which the diagram shows they were moored leaves only a view of the end of Pier 68 when one looks along the starboard side of The Georgetown, as its captain testified he did.

The Salem's captain testified that "She (carfloat No. 40) rubbed alongside of The Pawling and forced The Georgetown into The Salem." He was asked whether he saw carfloat No. 40 "strike the barge outside of The Georgetown." He repeated: "She rubbed alongside of The Pawling." No testimony was adduced from him as to the speed of The Newark and carfloat No. 40 at the time, or as to the manner in which the two vessels were handled.

■ The burden is, of course, on the libellant to prove negligence, Red Star Towing & Transportation Co., Inc., v. The Russell No. 7, D.C., 70 F.Supp. 713, affirmed 2 Cir., 168 F.2d 717. At most it has shown that carfloat No. 40 rubbed against The Pawling. There is no adequate showing that the contact was due to The Newark's excessive speed, negligent navigating or the failure to take proper heed of wind and tide. Consequently, the libellant has failed to establish that the respondent Delaware, Lackawanna & Western was negligent.

There was no real effort to show negligence on the part of the respondent, the New York Central Railroad. It is not contended that mooring The Georgetown at a private dock constituted negligence. As testified to, the barge was moored next to the pier with another barge moored outside of it. This fact is hardly sufficient to prove that it was "moored at a place where it was likely to be damaged".

Our Court of Appeal has condemned a finding of negligence which "rests only upon a possibility which appears to approach a likelihood", as one based upon speculation rather than upon facts. The Pride, 2 Cir., 135 F.2d 999, 1001. Any finding of negligence here would, it seems, fall within this condemnation.

In view of the foregoing, the decree should be for the libellant on the first cause of action, and for the respondents on the second cause of action.

Findings of fact and conclusions of law in conformity with the foregoing opinion will be filed herewith.