METROPOLITAN SAND & GRAVEL CORPORATION, Libelant,

v.

THE DWYER NO. 25, and THE RUSSELL NO. 1, Respondents.

DWYER LIGHTERAGE, Inc., as owner of THE DWYER NO. 25, Libelant,

v.

THE RUSSELL NO. 1, her engines, etc., Russell Bros. Towing Co., Inc., Claimant, and New York Trap Rock Corporation, Respondent.

United States District Court, S. D. New York.

Dec. 10, 1954.

Krisel Beck & Taylor, New York City, by Irving A. James, New York City, of counsel, for libelant.

Macklin, Speer, Hanan & McKernan, New York City, by Charles J. Carroll, Jr., New York City, of counsel, for Dwyer Lighterage Inc.

Alexander & Ash, New York City, by Edward Ash, New York City, of counsel, for Russell Bros. Towing Co., Inc.

Hagen & Eidenbach, New York City, by Nelson J. Johnson, New York City, of counsel, for New York Trap Rock Corp.

GODDARD, District Judge.

These two suits have been consolidated for the purpose of trial. The suit by the Metropolitan Sand & Gravel Corporation [hereinafter referred to as Metropolitan] against the barge Dwyer No. 25 and the tug Russell No. 1 is to recover damages to its dock at 31st Avenue and 120th Street, College Point, New York, on the night of August 30–31, 1951.

The suit by the Dwyer Lighterage, Inc., the owner of the barge Dwyer No. 25 against the tug Russell No. 1 and the New York Trap Rock Corporation, the charterer, is to recover damages sustained by the Dwyer No. 25 while at Metropolitan's dock.

Metropolitan claims that its dock was damaged as a result of the Dwyer No. 25 being hung up at its dock with a line too short to allow for the falling tide.

The Dwyer Lighterage alleges two causes of action. One against the tug Russell No. 1 which allegedly had placed the barge in the position which caused the damage; the other against the Trap Rock Corporation, the charterer of the barge.

The pleadings admit that the Russell No. 1 shifted the barge, but deny it was done in a negligent manner or that the line, which it put out, was too short.

It was high tide on the night of August 30th at 11:19 D.S.T., and low tide on the morning of August 31st at 5:35 D.S.A., and there is a drop of little more than 7 feet in the tide.

At 10:45 D.S.T. on the night of August 30th, the Russell No. 1 arrived at the dock to pick up the Lehigh Valley barge No. 351 and tow it to 34th Street and the East River. A line was run from the Dwyer to the Lehigh Valley No. 351, which was moored between the Dwyer and the dock, and lines from the tug were run to the Lehigh Valley No. 351 and it was pulled out and the Dwyer pushed close to the dock; then the lines from the Lehigh Valley No. 351 to the Dwyer were released and lines put out from the Dwyer to the dock.

Although the Russell did not have consent to shift the Dwyer, the Russell was following a recognized custom of shifting another barge which blocked the entrance to the slip where it was reasonably necessary so that other vessels might pass in and out, but such removal must be exercised with care and caution. The Gildersleeve, No. 339, 2 Cir., 68 F.2d 845.

The mere shifting of the Dwyer did not cause the damage. The damage was due to the fact that the line from the bow of the Dwyer to the dock was so short that when the tide fell the bow was hung on the dock, and the question is—who is responsible?

The bargee of the Dwyer testified that the barge arrived at the Metropolitan dock at 10:45 p. m. on August 28th and was moored alongside the Lehigh Valley No. 351, which was moored to the dock; that he had been aboard the Dwyer from 8 a. m. until 5 p. m. on August 30th, when he left for the day, so that the barge was unattended during the night; that the barge still had on board about 100 to 130 tons of fine stone to be unloaded; that when he returned the next morning at 7 o'clock, the bow of the Dwyer was hung up on the dock; that the line leading from the bitt on the bow of the Dwyer was only about 7 feet long and was so taut that it had to be cut; that the bitt on the Dwyer and the cleat on the dock had been pulled out; that the stern line from the Dwyer to the dock was about 25 feet long and slack; that both the dock and the Dwyer were damaged; that the tide was "pretty low".

Stephen Erato testified that he had been employed by Metropolitan since 1947 as a dock laborer; that before he left at 4:30 p. m. on August 30th, the Dwyer was made fast to the Lehigh Valley No. 351 which was next to the dock; that when he returned the next morning, the Lehigh Valley No. 351 was gone and the Dwyer was next to the dock and its bow hung up on the dock; that the cleat on the dock and the bitt on the Dwyer had been pulled out; that the bow line from the Dwyer to the dock was 7 or 8 feet long.

The captain of the Russell No. 1 testified that after the Lehigh Valley No. 351 had been pulled away, he ordered the deck hand on the Russell No. 1 to go aboard the Dwyer and put out lines from the Dwyer to the dock; that he did not see what lines were put out.

The deck hand testified that he went aboard the Dwyer and put out a stern line of about 25 feet to the dock and a bow line of 6 to 8 feet long, [later he testified it was 8 to 10 feet long] which was made fast to the bitt on the Dwyer with the eye of the line over the cleat on the dock.

One witness who saw it the next morning, said the line was 7 feet long; another—that it was 7 to 8 feet.

It is apparent that even if the 10 feet is accepted, although I believe 8 feet is more accurate, that as the cleat on the dock was 5 feet from the bitt on the Dwyer, there would only be 5 feet of line to provide for the over 7 foot fall of the tide, and this would result in the Dwyer being hung up on the short bow line by which she was moored to the dock.

Counsel for the Russell in his brief urges that the line from the bow of the Dwyer to the dock was put out by an unknown man and not by the Russell's deck hand, and that the libel against the Russell should be dismissed. The evidence is to the contrary. The lines, the deck hand said he received assistance in handling from some other person, were either the Dwyer's stern line or the line from the Lehigh Valley No. 351 to the Dwyer—not the Dwyer's bow line to the dock which is the one that caused the trouble. The Russell's deck hand's testimony is:

"Q. And the inboard bow corner of the Dwyer 25; who made that line fast? A. I did.

"Q. Did this other fellow help you? A. No, sir.

\*    \*    \*    \*    \*    \*

"Q. And you made it fast to the dock? A. I did, sir.

\*    \*    \*    \*    \*    \*

"Q. And then you got aboard the tug? A. No. After I made it fast —I left a little slack in it."

The testimony is uncontradicted and convincing that the short bow line from the Dwyer to the dock was put out by the deck hand of the Russell No. 1.

The testimony is that when the Dwyer No. 25 was delivered to the charterer, the New York Trap Rock Corporation, it was in good condition and redelivered in damaged condition.

The charter provided that the Dwyer No. 25 would be returned to owner in same good condition, and the charterer is liable for breach of contract. P. Sanford Ross, Inc., v. Moran Towing & Transportation Co., Inc., 2 Cir., 55 F.2d 1052; Baldwin v. New York Central R. Co., D.C., 87 F.Supp. 562.

"Even though damage be not the result of his negligence, a charterer is secondarily liable for damage to a vessel during the charter period. O'Donnell Transp. Co. v. M. & J. Tracy, Inc., 2 Cir., 150 F.2d 735." Roah Hook Brick Co. v. Erie R. Co., 2 Cir., 179 F.2d 601, 605.

It was not negligence under the circumstances to leave the Dwyer No. 25 moored in the slip without a watchman or bargee during the night. The Kathryn B. Guinan, 2 Cir., 176 F. 301; United States v. Carroll Towing Co., Inc., 2 Cir., 159 F.2d 169; The No. C–4, D.C., 300 F. 757, affirmed 2 Cir., 300 F. 761.

There was no contract relation between Metropolitan and the Dwyer No. 25 and no act or failure to act on the part of the owner or charterer of the Dwyer No. 25 was a cause of the damage to the Metropolitan dock.

The libel of Metropolitan Sand & Gravel Corporation against the Dwyer No. 25 is dismissed, and the Metropolitan may have a decree against the tug Russell No. 1. Dwyer Lighterage, Inc., may have a decree holding the tug Russell No. 1 primarily liable, and the New York Trap Rock Corporation secondarily liable, with references to a Commissioner to assess the damages.

This opinion may serve as Findings of Fact and Conclusions of Law.