**Phillip G. SCHNEIDER, as owner of the 37 foot gas screw boat, THE MADGE, Libelant,**

v.

**George J. COWAN and John Boucher, Respondents.**

**No. 19773.**

United States District Court
E. D. New York.

April 3, 1958.

Dow & Stonebridge, New York City, William J. Troy, New York City, of counsel, for libelant.

Atkins & Weymar, New York City, William Weymar, Jr., New York City, of counsel, for respondents.

ABRUZZO, District Judge.

This is a suit in Admiralty brought by the owner of the sloop Madge to recover

damages for an alleged wrongful removal and negligent mooring which resulted in her sinking and destruction. The suit was originally instituted against respondent Cowan and his partner, one John Boucher, now deceased. At the trial the suit was discontinued as against said John Boucher.

The libelant purchased the Madge on May 10, 1948. At that time she was a sunken sloop. He raised her and made some repairs, particularly to the deck. On July 4, 1949, he moved this boat to Neguntatogue Creek and with the permission of the owner moored her to a bulkhead. He claims that in May, 1951, he purchased a rebuilt Chrysler motor which he installed at a later date.

In the spring of 1951 respondent purchased the bulkhead. Libelant claims that he was informed by the respondent at that time that the respondent was going to charge wharfage and that he tendered a check as partial rental but respondent refused to accept it, stating that he intended to improve the property and after the improvements were made he would then charge wharfage. On August 6, 1951, after the work had been commenced to repair the bulkhead, libelant moved his sloop to Rutherig's Shipyard located on the same creek some distance away. He intended to have the sloop overhauled, painted and other work done to put her in sailable condition.

Rutherig testified that he was the owner of the shipyard and had been repairing boats since 1924; that libelant's sloop was not worth repairing because it had no interior, motor or equipment. He requested libelant to move the sloop and because libelant failed to do so he returned the sloop to respondent's bulkhead on August 12, 1951, but before he did he had to pump water out of her because she had sunk.

On August 13th the respondent informed the libelant that as he was repairing the bulkhead it was encumbent upon the libelant to move the sloop so that the repairs could be made. Libelant claims to have asked one McKenna to tow the sloop to a yard some three or four miles distant but apparently McKenna never did. On or about August 14th the libelant visited the sloop, pumped out some water, and told the respondent that he would move her that day. He testified that later in the day he found that the Madge had been moved down the creek and had sunk in shallow water due to the fact that it had been anchored on high marsh land with its bow up in the air and its stern in the channel or fairway.

Libelant testified that he communicated with several companies but they were all too busy to raise the sloop. It is a significant fact and not disputed that from July 4, 1949, when he first moored the sloop to the respondent's bulkhead, until August 13, 1951, when it was finally moved, libelant used the sloop on but two occasions. From libelant's own admissions the sloop was unseaworthy and had a leak in the stuffing box.

The respondent, on the other hand, denied that he ever discussed rental at the bulkhead with the libelant and that when he purchased the bulkhead did not even know who the owner of the sloop was and did not learn who the owner was until some months later. He testified that when the sloop was finally moved from the bulkhead about 600 feet down the creek he threw out an anchor, drove a stake on the beach and tied a line from the boat to the stake, all in a workmanlike fashion. He advised the libelant the same day that he had moved his boat because men were already on the bulkhead making the repairs.

The respondent also testified that he asked the libelant at various times to move the sloop from his bulkhead.

The Town Constable testified that he had worked on police boats for 16 years and that on many occasions repaired boats. He saw the sloop at Rutherig's Shipyard at a time when the pumps were working on the sloop and at that time he saw that the stern was way down in the water. He went aboard the sloop, saw that it was in poor condition and had no engine. After the sloop was moved

from the bulkhead, the Constable notified the libelant on many occasions that it was his duty to remove the sloop but the libelant did nothing about it. On October 16, 1952, he served a summons upon libelant for violating a boating ordinance of the Town of Lindenhurst. It was only then that the libelant moved the sloop.

In his libel the libelant requested damages in the sum of $2,500, and at the trial he asked that the *ad damnum* be increased to $3,500.

There are two facts that impress the Court: (1) The libelant was given every opportunity to move his sloop and did not do so, although it was his duty to take care of his own boat; and (2) that there is an exaggerated claim for damages here as the facts indicate clearly that the boat was worthless.

The respondent was within his rights in moving the sloop.

It was held in The M. L. C. No. 10, 2 Cir., 10 F.2d 699, at page 702 as follows:

"To the same effect is the general law as understood in the courts of the United States, for it was held in Dutton v. Strong, 1 Black 23, 17 L.Ed. 29, that the owner of a pier which was private property might cut loose therefrom even a vessel which was using the same as a refuge from storm, and the exact point adjudged (as explained in Shively v. Bowlby, supra [152 U.S. 1, 14 S.Ct. 548, 38 L.Ed. 331]) was that the vessel had been wrongfully attached to the pier, and therefore no wrong was wrought by cutting her loose. * * *"

The fact that in Dutton v. Strong, supra, the lines of a vessel that had tied up at a pier during a storm were cut loose by the pier owner because the lines created a dangerous hazard to the pier does not distinguish said case from this one. It is immaterial whether a pier is endangered or not. Respondent's pier is a private wharf. See The M. L. C. No. 10, supra.

No wrong is created unless the owner of a private pier damages the vessel of a trespasser or licensee wilfully. See Baldwin v. New York Cent. R. Co., D. C.E.D.N.Y., 87 F.Supp. 562, 564.

The Chancellor, 2 Cir., 30 F.2d 227, is distinguishable in that in that case the trespasser vessel was shifted out from the pier into an unsafe berth so that she lay in a berth where the bottom was shelving and she would rest on a ridge at low tide.

In the instant case libelant at the best was a mere licensee and respondent had a perfect right to move libelant's vessel. The only duty respondent owed libelant was not to damage his sloop wilfully.

The Court finds that the respondent had the right to move the sloop after having requested libelant on many occasions to do so.

The Court finds further that the respondent carefully moored the sloop and did all that was required of him under the circumstances; that the mooring was a proper one and that the Madge was moored in a safe berth; that she sank because she had a leak in her stuffing box which had existed for a long time and because she was in an unseaworthy condition.

Libelant is seeking damages for an engine. Rutherig and the Town Constable, both of whom are disinterested witnesses, testified that the sloop had no engine.

The Court finds that the sloop had no engine as claimed by the libelant and that his testimony indicates a deliberate plan to obtain large damages. The libelant is not worthy of belief.

A decree should be entered in favor of the respondent.