## NICHOLSON TRANSIT CO. v. NICHOLSON UNIVERSAL S. S. CO.

No. 5951.

Circuit Court of Appeals, Sixth Circuit.
June 27, 1932.

H. N. Longley, of New York City (Cleveland Thurber, of Detroit, Mich., Martin Detels, of New York City, Edward S. Reid, Jr., and Miller, Canfield, Paddock & Stone, all of Detroit, Mich., and Bigham, Englar, Jones & Houston, of New York City, on the brief), for appellant.

Carl V. Essery, of Detroit, Mich. (Warren, Hill & Hamblen, Sherwin A. Hill, and Austin Fleming, all of Detroit, Mich., on the brief), for appellee.

Before HICKENLOOPER, MACK, and SIMONS, Circuit Judges.

MACK, Circuit Judge.

Libelant-appellant chartered three steamships, including the City of Bangor, to respondent-appellee, a corporation; libelant owned one-half of the stock and had one-half of the directors of this operating company. While respondent covenanted to "pay all costs of operation, care and maintenance of said Steamers of every kind and description * * * including repairs and upkeep," the same paragraph provided that "Any items of repairs paid by the Charterer and for which said Owner receives reimbursement from its underwriters will be repaid to said Charterer when and as received." Respondent further agreed "to procure and pay for full marine as well as fire P. I. and disbursements insurance" covering the steamers and their owner "to be in form and amount satisfactory to the owner and run to the owner"; and further to "return said Steamers to said Owner * * * in like good order and condition as when taken, ordinary wear and tear excepted." In case of total loss, the charter was to end as of the date of such loss as to such vessel and charterer was to be relieved from payment of further charter money.

Respondent procured the insurance and paid $10,000 premiums; the insured therein was libelant; the loss clause provided for payment to insured and to a named mortgagee under a bond issue. The City of Bangor stranded on the final day of the period of hire; she was found a constructive total loss and abandoned to her underwriters, which paid in full under the policies, a sum of $350,000, stipulated to be not less than the value of the vessel, by checks to the order of insured and the mortgagee. The original bond issue of $125,000 had theretofore been reduced to $105,000. The wreck was sold for $5,250 by the underwriters, at whose request libelant gave a bill of sale to the purchaser.

The libel was filed in the name of the insured, but concededly by and on behalf of certain of the underwriters. Respondent pleaded that it was entitled to the benefit of the insurance. From a decree dismissing the libel, the present appeal has been prosecuted.

■ While insurers are subrogated to the rights of the insured, the issues are unaffected thereby. The underwriters' rights are purely derivative; they may assert all that but no more than libelant might have claimed.

[■ The libel alleges delivery of the City of Bangor and failure to redeliver, in violation of the express provision of the charter party. This provision, however, in and of itself is interpreted to embody only the obligation which would have arisen in the absence of express agreement; it does not therefore impose on the charterer liability regardless of negligence. Mulvaney v. King Paint Mfg. Co., 256 F. 612 (C. C. A. 2d, 1919); see Learned Hand, J., dissenting, Shamrock Towing Co. v. City of New York, 32 F.(2d) 684, 686 (C. C. A. 2d, 1929); cf. Hildebrandt v. Flower Lighterage Co., 277 F. 436 (D. C. S. D. N. Y. 1919), affirmed 277 F. 438 (C. C. A. 2d, 1921). The failure to redeliver in good condition ordinarily compels the bailee to go forward with some proof that would refute the implication of negligence; here no evidence to explain the disaster was introduced by respondent.

■ This provision of the charter party may not, however, be isolated; the agreement must be looked at in its entirety for the respective rights and duties of the parties. It is on other provisions that respondent grounds its defense. Plainly the word "repairs" in the two sentences above quoted, the one requiring repayment to charterer if reimbursements are received therefor by owner from underwriters, the other requiring charterer to make the repairs, should be construed identically. Respondent contends that its obligations cover rebuilding in the event at least of a constructive total loss; libelant would restrict their scope to repairs for partial destruction, conceding that perhaps a 50 per cent. loss would come within the obligations, but denying this in case of a constructive total loss—i. e., when the cost of salving and repairs would exceed 75 per cent. of the hull insurance. We can see no reasonable basis to distinguish this agreement to pay "all costs of maintenance including * * * repairs" from the promise to "keep * * * in repair" in Sun Printing & Publishing Association v. Moore (1902) 183 U. S. 642, 655, 22 S. Ct. 240, 46 L. Ed. 366. A covenant in terms to repair imports a duty to restore in case of total destruction. Sun Case, supra; Dermott v. Jones (1864) 2 Wall. 1, 17 L. Ed. 762. Libelant's argument that a limiting significance be given to "items of repairs" as against the allegedly more inclusive phrase "keep in repair," is met by the above-stated concession in the case of a 50 per cent. loss; we find no reasonable basis for distinguishing a 50 per cent. from a 75 per cent. (constructive total) or even a higher loss. Nor does the mortgage provision, urged by libelant, that insurance moneys received for partial damage are to be applied to restoration while those for total destruction are to be applied first to the reduction of outstanding bonds, affect the situation. It determines only the rights and obligations of mortgagee and libelant inter sese; even assuming respondent's actual or constructive notice thereof, it clearly has no bearing on the interpretation of the charter party to which mortgagee was not a party. Moreover, there is no inconsistency between this provision and the charter party if, as we hold, respondent's obligation to repair and its right to reimbursement for such repairs to the extent of insurance money received by libelant, covers the case of total loss. While the moneys paid by the insurance company must in that event be applied first to the cancellation of the mortgage, libelant's obligation of reimbursement is not thereby diminished. That obligation remains in full force, if and to the extent that it receives the insurance money directly, or indirectly through payment of its debt to the bondholders, pursuant to the loss clause and the mortgage provisions. The situation would be different if the insurance companies should be insolvent: while respondent's obligation to repair, whether the loss were partial or total, would remain unimpaired, its

**92**

·right to reimbursement therefor would be limited to the amount actually recovered from the insurance companies. No such case is here presented.

 Moreover, we agree with the views expressed by the District Judge, that, in view of libelant's half interest in respondent, any doubt as to their agreement must be resolved against an interpretation that would result in absolving the underwriters from ultimate liability because of subrogation and throwing the loss on the parties. The relationship of the parties to a contract at the time of its execution is always material to its interpretation. In re Tidewater Coal Exchange, 292 F. 225 (D. C. S. D. N. Y. 1923), affirmed 296 F. 701 (C. C. A. 2d, 1924); Corbett v. Winston Elkhorn Coal Co., 296 F. 577 (C. C. A. 6th, 1924). No disregard of the corporate fiction is involved in recognizing the pecuniary interest of a large stockholder in the losses of the corporation.

Finally, a supplementary indication that respondent was to enjoy the benefit of the insurance is found in its undertaking to pay the premiums. Brice & Sons v. Christiani & Nielsen, 30 Lloyd's List L. R. 177 (King's Bench, 1928), quoted from with approval in ·Newport News Shipbuilding & Drydock Co. v. United States, 34 F.(2d) 100, 107 (C. C. A. 4th, 1929). White v. Upper Hudson Stone Co., 248 F. 893 (C. C. A. 2d, 1917), is distinguishable in two vital respects. In that case, the charterer paid only for insurance additional to that procured by the owner and paid for it for the privilege of taking the vessel outside of designated limits within which alone the insurance bought by the owner was operative. Moreover, it was therein sought to make the provision with regard to premium payment the sole and not merely an additional basis for allowing the charterer the benefit of the insurance.

Judgment affirmed.