# D. H. PRITCHARD, CONTRACTOR, Inc., v. NELSON.

## No. 5317.

Circuit Court of Appeals, Fourth Circuit.

Feb. 14, 1945.

---

James G. Martin, of Norfolk, Va., for appellant and cross-appellee.

W. R. Ashburn, of Norfolk, Va. (George M. Lanning, of Norfolk, Va., on the brief), for appellee and cross-appellant.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This case comes before us on cross-appeals by D. H. Pritchard, Contractor, Incorporated (hereinafter called Contractor), and J. Craig Nelson, from a judgment ordering Contractor to make payment, under a contract between Nelson and Contractor's predecessor in title, Daniel H. Pritchard, deceased (hereinafter called the Nelson-Pritchard Agreement), to Nelson on coal mined from certain coal lands in West Virginia, and further, determining that the

withholding of payments from Nelson by Contractor was not a breach of a settlement agreement entered into by Contractor and Nelson.

For the purpose of securing a volume customer who would purchase coal mined from the "William Ann Mine Properties" in Mingo County, West Virginia, and through the efforts of Nelson, who had contacts with railroads whose eastern termini were at Hampton Roads, Virginia, a "Captive-Mine Plan", under which the Receivers of the Seaboard Air Line Railway Company (herein called Receivers) were to take coal mined from these properties, was duly executed.

The Plan was consummated by means of several contracts of even date, May 1, 1934: The "Seaboard Lease", whereby Receivers were authorized by the fee owners to mine coal from the "Upper Thacker Vein" running through the "William Ann Mine Properties"; the "Pritchard Lease", whereby Pritchard was given authority to mine coal and use the machinery and equipment on the properties; the "Seaboard-Pritchard Agreement", executed by Pritchard and Receivers, providing for the mining of coal from the tract referred to in the two above named leases, and for the price which Receivers were to pay Pritchard for his services.

As evidenced by a letter from Nelson to Pritchard, dated May 7, 1934, and an undated confirmation agreement, Nelson was to receive, as compensation for his services in securing the volume customer, 25½ per cent of the profits arising from the Seaboard Pritchard Agreement.

Subsequently, on March 5, 1936, the contract involved in this litigation (herein called the Nelson-Pritchard Agreement) was executed. This contract incorporated by reference the Seaboard-Pritchard Agreement, the Seaboard Lease, the Pritchard Lease, the letter of May 7, 1934, and the undated confirmation agreement above referred to. It provided for a per-ton compensation to Nelson, in lieu of a profit percentage, to be paid "under the contract by reason of the production by the party of the first part of coal for the account of the Receivers, *whether under the 'Seaboard-Pritchard Agreement', or under any renewal and extension, or amendment of, or substitute for, said agreement,* and whether extending less or more than five years from July 1, 1934, * * *." (Italics ours.) The contract further pro-

vided that, in the event of Nelson's death payments were to be made to Nelson's wife for her natural life, or until sooner terminated under the terms of the contract. Article Eight of the contract expressly bound the heirs, assigns and personal representatives of Pritchard.

Payments were made to Nelson under the agreement until Pritchard's death on July 14, 1941. After July 28, 1941, when the administrator of Pritchard's estate conveyed all of Pritchard's rights to Contractor, a West Virginia corporation created for the purpose of carrying on the mining operations, Contractor refused to continue payments to Nelson. Nelson secured a declaratory judgment by the District Court of the United States for the Eastern District of Virginia, providing that the several contracts incorporated by reference in the Nelson-Pritchard Agreement constituted one agreement, to be so construed, and that Contractor was bound by the terms of the agreement.

On December 24, 1942, Contractor and Nelson entered into a settlement agreement, whereby Nelson agreed to accept payment of 1½ cents per ton for the period September 1, 1942, to March 1, 1943, instead of 3 cents as provided for in the decree of the District Court, on condition that Contractor perform all obligations under the decree. Should Contractor default in making any of the payments, the settlement agreement stipulated that Nelson was to be restored to all his rights under the decree.

Both the Seaboard Lease and the Pritchard Lease (incorporated by reference in the Nelson-Pritchard Agreement) describe by an extensive list of calls the metes and bounds of the William Ann Mine Properties, a tract of 4,095.06 acres. By specific calls a tract of 69 acres, more or less (herein referred to as the Vernatter Tract), lying within the external boundaries of the Properties, was excluded from the terms of the Leases. However, both Leases provided that, if, as and when the Vernatter Tract was redeemed or acquired by the fee owners from the State of West Virginia, it was to be added to the whole tract and made subject to all the terms and provisions of the Leases.

By letter of March 12, 1943, the fee owners notified Receivers that the Vernatter Tract had been acquired, and "that said tract is now subject to all the terms and conditions of said indenture of lease (of

May 1, 1934) (as so modified extended and renewed)."

Later, when Contractor refused to make payments on coal mined from the Vernatter Tract, Nelson brought this suit, seeking recovery under both the Nelson-Pritchard Agreement and the settlement agreement of December 24, 1942.

The District Court readopted the findings and conclusions of Judge Way in the declaratory judgment action, and further found that it was the intention of the parties that if, as and when the Vernatter Tract was acquired, it would come within the purview of the Nelson-Pritchard Agreement.

■ Needless to say, we are bound by these findings of the District Court, in the absence of a showing that such findings are clearly erroneous. Federal Rules of Civil Procedure, Rule 52(a), 28 U.S.C.A. following Section 723c. We think the findings of the District Court were clearly correct in so far as the purview of the Nelson-Pritchard Agreement is concerned.

■ Contractor contends that the District Court, in determining the intentions of the parties in regard to the Vernatter Tract, was confined to the specific words of paragraph B of the Nelson-Pritchard Agreement. It was determined by the District Court, in the first suit, that all the several contracts, being incorporated by reference, were part of the Nelson-Pritchard Agreement. In this we think the District Court was plainly right. A contract may be contained in several instruments. If made at the same time, in relation to the same subject matter, they may be read together as one instrument. This rule obtains even when the parties are not the same, if the several contracts were known to all the parties. See Peterson v. Miller Rubber Co., 8 Cir., 24 F.2d 59. It is not our function here to disregard relevant parts of the contract in preference to a single paragraph. See Utter v. Irvin, 5 Cir., 132 F.2d 416. It is well settled that all parts of the contract must be considered. Summers v. Travelers Ins. Co., 8 Cir., 109 F.2d 845, 127 A.L.R. 1336; Boston Iron & Metal Co. v. United States, 4 Cir., 55 F.2d 126, certiorari denied 286 U. S. 558, 52 S.Ct. 641, 76 L.Ed. 1292; Southern R. Co. v. Stearns Bros., 4 Cir., 28 F. 2d 560, certiorari denied 279 U.S. 838, 49 S.Ct. 252, 73 L.Ed. 985.

■ While it is sound law that the courts have no right to make contracts different from those actually entered into by the parties, City of Philadelphia v. Lieberman, 3 Cir., 112 F.2d 424, certiorari denied 311 U.S. 679, 61 S.Ct. 48, 85 L.Ed. 438; Pitcairn v. American Refrigerator Transit Co., 8 Cir., 101 F.2d 929, certiorari denied 308 U.S. 566, 60 S.Ct. 78, 84 L.Ed. 475, it is equally true that we may not disregard the obvious intentions of the parties. Nebulous as these intentions sometime appear, it is our duty to place ourselves, as nearly as may be, in the situation of the parties at the time of the execution of the contract. Rocky Mountain Fuel Co. v. Albion Realty & Securities Co., 10 Cir., 70 F.2d 212; Sternberg v. Drainage District No. 17, 8 Cir., 44 F.2d 560. The relationship of the parties to a contract when executed is always material to its interpretation. Nicholson Transit Co. v. Nicholson-Universal S. S. Co., 6 Cir., 60 F.2d 90.

■ When these maxims are applied to the case at bar, it becomes, we think, crystal clear as to just what the parties intended when they executed the Nelson-Pritchard Agreement. It is patent from the undated confirmation agreement above referred to that the parties intended, since Nelson had rendered valuable services to Pritchard, that Nelson (or his wife) should receive his share of the fruits of the joint efforts of Nelson and Pritchard so long as the Seaboard contract remained in force; but these rights were to cease, in any event, upon the death of Nelson and his wife.

■ The parties, by Article 8, expressly made the Nelson-Pritchard Agreement binding on the heirs, assigns and personal representatives of Pritchard. Further, it was obviously contemplated that Pritchard's rights might sometime in the future be transferred to a corporation, as was later done, and Nelson's rights were to continue in full force and effect as if such transfer had never been consummated. Part and parcel of these rights was the specific provision that if, as and when the Vernatter Tract was brought within the terms of the agreement, Nelson was to receive his share of the benefits arising therefrom. The mere fact that acquisition was delayed does not divorce the effect of this specific provision from the instrument. If this were not so, no after acquired property clause in a mortgage might be held valid.

■ Counsel for Contractor further contends that the part of the Nelson-Prit-

chard Agreement declaring that this is to take the place of any former agreement, precludes the Court from considering the other instruments. With this we cannot agree. The history of the transaction clearly shows that the parties intended that the Nelson-Pritchard Agreement, providing for per ton payments, should replace the former profit percentage agreement.

With reference to the other point raised on this appeal, Contractor contends that the Vernatter Tract was not within the contemplation of the parties at the time of the settlement agreement, and thus there was no default.

We are not here concerned with the doctrine of damages as laid down in Hadley v. Baxendale, 1854, 9 Exch. 341. This is not strictly a question of damages. Nelson seeks only to be restored to his rights under the decree, as intended by the settlement agreement of December 24, 1942.

Judge Way's decree of November 12, 1942, expressly ordered Contractor to pay Nelson in accordance with the contract of May 5, 1936, and this order was made a part of the settlement agreement.

The District Judge in the instant case was, we think, in error in determining that the agreement of December 24, 1942, was not breached for the reason that the controversy as to the Vernatter Tract was not in the minds of the parties at the time of the execution of the settlement agreement. Nelson entered into the settlement agreement in good faith, with the obvious intent that it would aid in the preservation of his rights under the contract.

The settlement agreement was for the primary benefit of Contractor. It provided for an amortization of a debt due, in lieu of the hardship of making a lump sum settlement under the Court's decree. It does not now lie in the mouth of Contractor to attach devious meanings and piece-meal defenses to recovery under the contract. Whether the parties to the particular controversy involving the Vernatter Tract had this precise controversy in mind, we think, is of no great moment. However, there would be no measure of consistency in allowing recovery for coal mined from the Vernatter Tract, retroactive as of the date of acquisition of the Tract, and in the same breath denying that the parties contemplated such a controversy at the time of the settlement agreement. Especially is this true in the face of the fact that ac-

quisition of the tract was intended from the beginning, as far in the past as May 1, 1934.

We close with the observation that the general equities here strongly favor Nelson. One attempt, scotched by the court, had already been made to take away Nelson's rights. That attempt reflected little credit on those who conceived it and endeavored to carry it out. Courts should not attempt to construe contracts in favor of those who break them. Even then, if we concede that the defense as to the Vernatter Tract was set up in good faith, we think the settlement agreement, when fairly construed, sustains the interpretation for which counsel for Nelson contend. Contractor was promptly informed that any withholding of payments to Nelson on deliveries of coal from the Vernatter Tract would be considered by Nelson as a breach of the settlement agreement. When, therefore, these payments were withheld, without legal justification therefor, we think that Contractor should suffer the consequences provided in the settlement agreement.

The judgment of the District Court is affirmed as to Contractor's appeal; reversed as to Nelson's appeal.