Robert R. BUNTIN, Claude Overton, C. P. Long, Jr., and R. W. Thompson, Jr., Appellants,

v.

Mike FLETCHAS, Appellee.

No. 17015.

United States Court of Appeals
Fifth Circuit.

July 18, 1958.

Webb M. Mize, Ernest G. Martin, Jr., Gulfport, Miss., for appellants.

L. C. Corban, Biloxi, Miss., for appellee.

Before HUTCHESON, Chief Judge, and BROWN and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

Libellants, the appellants here, sued the respondent, Mike Fletchas, for damages in the amount of $1,600 caused by the destruction of their small houseboat during Hurricane Flossy in 1956. They brought the proceeding in admiralty in the District Court for the Southern District of Mississippi, and appealed from an adverse judgment.

Mike Fletchas, the appellee, operated a small ship repair yard near Pascagoula, Mississippi, on Kreb's Lake, which runs into the Gulf of Mexico. Because of its location, the yard was generally con-

sidered safe from storms and wind coming from the direction of the Gulf area. The opening of the yard was due North, the Gulf being almost due South from the opening. The yard was also bounded by land on the south, east, and west sides. Mike Fletchas was a man of the sea. He had always lived on the Gulf coast, and for almost 44 years had engaged in ship repair work or related activities. He was familiar with the eccentricities and dangers of gulf hurricanes.

Some time during the first week of September 1956 the appellants left their small houseboat with Fletchas at his shipyard to be repaired. Although the parties had originally agreed that the boat would be picked up around September 22, Long, one of the appellants, and Fletchas agreed by telephone that the houseboat would remain at the yard until repairs on another boat belonging to appellants were completed so that both boats could be picked up and paid for at the same time. After repairs on the small houseboat were completed, it remained at the yard. In the meantime, Hurricane Flossy began to move toward the Gulf area. Between September 21 and the time appellants' boat was destroyed there were general hurricane warnings. Fletchas knew that the hurricane was coming, and that according to United States Weather Bureau reports it was expected to strike the Gulf area during the night of September 23.

During the afternoon and evening of the 23rd Fletchas secured the appellants' small houseboat and other craft that were at his yard. Some boat owners came to the yard and secured their own boats. As the Weather Bureau predicted, Flossy struck the Gulf area the night of September 23, 1956. It left a path of destruction. The small houseboat owned by appellants was destroyed, although other craft in the yard that were secured in the same manner survived the storm.

Appellants charge Fletchas with being negligent in failing to exercise ordinary prudence in securing the boat to ride out the hurricane without danger. Fletchas testified that he did what he thought best in securing the boat to ride out the storm, and that when he left the yard the night of the storm the houseboat was tied down so as to withstand the high winds coming from the Southwest. He used a three-fourths inch thick rope on each end of the craft, and rubber tire fenders between the boat and dock. There was enough slack so that the boat could rise and fall four feet without jamming.

Some time after 10 o'clock that night, the last time Fletchas was at the yard, the wind shifted and became northeasterly. As a result of the abrupt change, the boat broke away and was destroyed. Appellants contend that if Fletchas had tied the boat down from all four corners, it would have survived any abrupt wind change. Fletchas, they say, should have foreseen the probability of an abrupt wind change.

The district court concluded that appellants failed in their burden to prove lack of ordinary care on the part of Fletchas, and that "Fletchas acted, under the circumstances, as a reasonably prudent man would have acted". Fletchas was allowed to recover on his cross-libel for what was agreed to be the reasonable cost of the repairs to the houseboat.

The law of bailment is applicable in suits for damages to a ship that has been left with another for the purpose of repairs. International Mercantile Marine S.S. Co. v. W. & A. Fletcher Co., 2 Cir., 1924, 296 F. 855. The effect of the district court's holding was to say that appellants, the bailors, failed to satisfy their burden to show negligence. We hold that the finding was not clearly erroneous.

When a bailor sues a bailee for loss of the thing bailed, and charges the bailee with negligence, the question arises whether the bailor must affirmatively show negligence, or whether the bailee must affirmatively show due care. The bailor has the burden of proof because he has the affirmative of the case; however, when the bailor shows delivery to

a bailee and the bailee's failure to return the thing bailed, he makes out a prima facie case of negligence against the bailee. The Joseph J. Hock, 2 Cir., 1934, 70 F.2d 259; 6 Am.Jur. Sections 368, 371. This does not, however, shift the burden of proof from bailor to bailee. The burden of proof never shifts. When, however, the bailor has made out a prima facie case, "it then becomes the duty of the bailee to go forward with the evidence and explain his default by showing facts and circumstances sufficient in law to exonerate him from liability for injury". 6 Am.Jur., Section 374, p. 465. See also Nicholson Transit Co. v. Nicholson Universal S.S. Co., 6 Cir., 1932, 60 F.2d 90; Alpine Forwarding Co. v. Pennsylvania R. Co., 2 Cir., 1932, 60 F.2d 734. One view is that the bailee need show only that the loss was caused by some act consistent with due care on his part, such as an act of God; then the bailor must affirmatively show negligence.[1] Another is that the bailee must do something more than merely show that the loss was occasioned by something consistent with due care; he must show affirmatively acts which constitute due care, because the circumstances of the loss are generally peculiarly within his knowledge.[2] Lake Union Dry Dock & Machine Works v. United States, 9 Cir., 1935, 79 F.2d 802. Under either view, however, the judgment in this case must be affirmed.

The houseboat was secured in the same manner as other boats that survived the hurricane at the shipyard. Some of the boats were secured by their owners, and some were secured by Fletchas. All were secured the same way. Leo Hudgins, a shrimp boat owner, testified that the use of a three-fourths inch thick rope tied from two ends, plus a rubber tire to act as a fender, was the customary method of securing a boat to ride out a hurricane. He secured his boat at the shipyard the same way. His testimony was not weakened during cross-examination.

Fletchas testified that he took the precautions a man with 44 years experience would take to prevent damage to the houseboat. Appellants call our attention to the case of Inland Power & Light Co. v. Grieger, 9 Cir., 1937, 91 F.2d 811, 112 A.L.R. 1075. This case held that when an act of negligence concurs with an act of God to cause damage, the negligent party is liable. We agree; however, the bailor must still establish negligence. When Fletchas came forward with proof of due care, the burden to go forward with evidence of negligence then fell upon appellants. cf. Falls Church Airpark Co. v. Mooney Aircraft, 5 Cir., 1958, 254 F.2d 920. They failed to meet this burden.

The judgment is

Affirmed.

---

1. "In actions based on negligence of the bailee, many of the decisions, especially among the earlier cases, explicitly or apparently support the view that after the bailor has proved nonreturn, or return in a damaged condition, of the property, the bailee satisfies his duty of going forward with evidence to meet the presumption of negligence thus raised, or the prima facie case thus made out, when he proves merely that the property was lost or damaged by an occurrence which, on its face, is consistent with due care on his part, such as a loss by burglary or theft, or a destruction by fire or apparent accident, and that this is sufficient to put the bailor to actual proof of negligence in order to sustain his ultimate burden of proof. * * *" 6 Am.Jur. § 378, p. 469.

2. "* * * Since the facts surrounding the loss are, ordinarily, peculiarly within his knowledge, courts taking this view support the rule that to overcome the presumption of negligence or prima facie case, the bailee's duty in this respect includes production of evidence that the loss was not attributable to any want of due care on his part, and that to this end he is bound to disclose fully, in so far as he can, the manner in which the loss occurred, the facts and circumstances attending it, and the precautions taken to prevent it. * * *" 6 Am.Jur. § 379, p. 470.