NIAGRA FIRE INSURANCE COM-
PANY, a Corporation, Libelant,

v.

DOG RIVER BOAT SERVICE, INC.,
a Corporation, Respondent.

No. 2643.

United States District Court
S. D. Alabama, S. D.

Sept. 29, 1960.

Richard W. Vollmer, Jr., of Pillans, Reams, Tappan, Wood & Roberts, Mobile, Ala., for libelant.

Alexander F. Lankford, III, of Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, Ala., for respondent.

DANIEL HOLCOMBE THOMAS, District Judge.

Niagra Fire Insurance Company, a corporation organized under the laws of the State of New York and duly authorized to engage in the business of marine insurance, subrogated to the rights of its insured, Lee Motor Company of Monroeville, Alabama, brings this libel against Dog River Boat Service, Inc., a corporation organized and existing under the laws of the State of Alabama, with its place of business in Mobile County, Alabama. Negligence on the part of Dog River Boat Service, Inc., in the destruction by fire of the yacht "Mabel H.", is alleged, and the recovery of damages is prayed.

The Court, having considered the evidence, and the arguments, and the submitted memorandum of counsel, now, after due deliberation, makes its findings of fact and conclusions of law.

### Findings of Fact

1. The "Mabel H." was a 38-foot Chris-Craft raised-deck cruiser, owned by Lee Motor Company, hereinafter referred to as Lee. Niagra Fire Insurance Company, hereinafter referred to as Niagra, insured Lee, as owner of the "Mabel H.", against the perils of the sea, including fire.

2. Sometime in the month of March 1957, Lee delivered the yacht to Dog River Boat Service, Inc., hereinafter referred to as Dog River, for the purpose of effecting certain repairs to the vessel. These repairs were completed near the end of March and the vessel was river tested. It was determined on the test that the yacht's engine was in need of replacement, through no fault of Dog River, and Lee arranged with a third party, who is not involved in this litigation, to replace the defective engine. Under the arrangement, the third party was to replace the engine on Dog River's premises and pay Dog River for any equipment or personnel needed in performing the work.

3. The new engine was ordered, and while the parties were awaiting its arrival, Dog River, as an accommodation to Lee, moved the "Mabel H." out of the open weather into one of its enclosed boathouses. While the boathouse was

usually rented to independent boat owners, no rental fee was charged to Lee by Dog River for this service. The movement of the yacht into the boathouse was with the complete consent and knowledge of Lee.

4. The boathouse contained four stalls for the purpose of housing boats. Three of the stalls were occupied by three yachts on a rental basis and the fourth stall was occupied by the "Mabel H." The owners of these vessels all possessed keys to the boathouse and could remove their yachts at their pleasure. Each boat owner kept his personal equipment in his respective stall.

5. Dog River kept the boathouse lighted and had two 2½-gallon foam fire extinguishers inside the boathouse. A caretaker was employed by Dog River to check the premises of the company, including the boathouse where the "Mabel H." was berthed. This caretaker lived on the premises but did not maintain a 24-hour watch on the premises in the sense that he did not make regularly scheduled inspections throughout the night. He did make a routine inspection each evening prior to retiring.

6. The boathouse was made of timber supports covered by corrugated metal; there were no fire walls between the boat stalls; there was no fire sprinkler system; there was no fire alarm system; there was no fire hose connected to a water main on the premises; and there were no fire hydrants on the premises. No other such boathouses in this area were equipped with fire protective devices such as fire walls, fire sprinkler systems, or alarm systems. These facts were known to Lee.

7. Approximately one month after the "Mabel H." was moved into the boathouse stall, to wit, approximately 2:30 p. m. on the morning of May 13, 1957, the Dog River boathouse together with the four vessels berthed therein, including the "Mabel H.", was completely destroyed by fire.

8. The origin of the fire was unknown. The caretaker was awakened from his sleep by a crackling noise. When he ran outside to determine the source of the noise, he saw the boathouse was in flames. He ran back inside, instructed his wife to call both the fire department and his son who lived nearby, dressed and hurried to the scene of the fire. His son arrived at the scene shortly thereafter, and together the two men cut loose and saved several small boats which were tied to the outside of the boathouse. The flames were too intense for the men to enter the boathouse. The fire department answered the call with three engines and arrived on the scene from five to seven minutes from the time they received the call. By this time the boathouse was completely in flames and near collapse. The fire department, pumping water from the river, had the fire under control in approximately forty-five minutes. They remained on the scene until sometime after dawn.

9. The "Mabel H." was burned to the water level and was considered a complete loss. Under the contractual terms of its insurance policy, Niagra was obligated to pay and has paid Lee $12,799 for the loss of the vessel. Niagra, upon payment of the $12,799, became subrogated to all the rights of Lee to the extent of payment. As a result, it has brought this action alleging negligence on behalf of Dog River in the destruction of the "Mabel H."

Conclusions of Law

I.

The Court has jurisdiction of the parties and the subject-matter now before it.

II.

There existed between Lee and Dog River a mutual bailment for hire. Although the vessel was kept in the boathouse as an accommodation to Lee, and although Dog River had completed all of the labor and repairs it had originally contracted to perform, the vessel was awaiting additional work which the respondent would assist in performing and from which it would derive some financial gain. These facts bring the rela-

tionship within the purview of Prince v. Alabama State Fair, 1895, 106 Ala. 340, 17 So. 449, 28 L.R.A. 716 wherein the Supreme Court of Alabama in quoting from the Massachusetts decision of Newhall v. Paige, 10 Gray 366, stated:

"A person becomes a bailee for hire when he takes property into his care and custody for a compensation. The nature and amount of the compensation are immaterial. The law will not inquire into its sufficiency, or the certainty of its being realized by the bailee. The real question is, was the contract made for a consideration? If so, then it was a locatum, and not a depositum, and the defendant was liable for the want of ordinary care. The general rule as to the consideration of a contract is well understood, and is the same in case of bailments as in all other contracts. The law does not undertake to determine the adequacy of a consideration. That is left to the parties, who are the sole judges of the benefits or advantages to be derived from their contracts. It is sufficient if the consideration be of some value, though slight, or of a nature which may inure to the benefit of the party making the promise. Where such a consideration exists, a contract cannot be said to be a nudum pactum; nor a bailment, a gratuitous undertaking." 17 So. at page 450.

It follows that the relationship between Lee and Dog River was that of a mutual bailment for hire.

It has been held by the Fifth Circuit Court of Appeals that the law of bailment is applicable in suits for damages to a ship that has been left with another for purposes of repairs. Buntin v. Fletchas, 5 Cir., 1958, 257 F.2d 512.

### III.

While Dog River was not an insurer of the "Mabel H.", Indamer Corp. v. Crandon, 5 Cir., 1952, 196 F.2d 5, there was duty owed by Dog River in its capacity as bailee to exercise ordinary and reasonable care in the protection of the vessel. Aircraft Sales & Service v. Bramlett, 1950, 254 Ala. 588, 49 So.2d 144; Higman v. Camody, 1896, 112 Ala. 267, 20 So. 480; Stegemann v. Miami Beach Boat Slips, Inc., 5 Cir., 1954, 213 F.2d 561.

### IV.

The burden of proving any breach of duty on behalf of the bailee rested upon the libelant. Commercial Molasses Corp. v. New York Tank Barge Corp., 1941, 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89; Erlbacher v. Republic Homes Corporation, 8 Cir., 1959, 263 F.2d 217; Buntin v. Fletchas, supra; Motor Vessel J. Stalin, D.C.D.Fla.1954, 1954 A.M.C. 1383. However, when the libelant proved that the vessel was delivered to the bailee in good condition and was damaged while in the exclusive possession and control of the bailee, there arose a presumption of negligence on the part of the bailee, and the duty devolved upon the respondent to go forward with the evidence and show affirmatively that he exercised ordinary care. Erlbacher v. Republic Homes Corporation, supra, and cases cited therein.

This presumption or inference did not shift the burden of proof from the bailor to the bailee because this burden never shifts, Buntin v. Fletchas, supra; but imposed upon the bailee the duty to go forward with the evidence and show that it exercised ordinary care under the circumstances. If the bailee does go forward with enough evidence to raise doubts as to the validity of the inference, * * * the bailor does not sustain the burden of persuasion which upon the whole evidence remains upon him, where it rested from the start. Commercial Molasses Corp. v. New York Tank Barge Corp., 314 U.S. 104, at page 111, 62 S.Ct. 156, at page 161, 86 L.Ed. 89. The respondent overcame the presumption of negligence when it was shown that the origin of the fire was unknown and that respondent exercised ordinary care in the protection of the vessel. The evidence introduced by the bailee was sufficient to

**532**

raise doubts as to the validity of the inference of negligence.

## V.

■ The libelant contends that Dog River was negligent in not equipping the boathouse with fire walls, a sprinkler system, a fire alarm system, a night watchman, and other fire preventive devices. In view of evidence to the effect that no other prudently operated boat yards in the Mobile vicinity equipped their establishments with such devices, the absence of these items did not constitute negligence on the part of the respondent which would charge it with liability.

## VI.

■ Libelant further contends that the bailee was negligent in that its agent, the caretaker, did not take the proper actions to extinguish the fire after its discovery. The Court cannot concur in this contention. The caretaker did all that was expected of a reasonable man under similar circumstances. He telephoned for assistance and personally attempted to save whatever property he could from the fire. It cannot be said that these actions constituted negligence.

## VII.

Finally, the libelant alleges that the bailee was negligent in permitting its electrical outlets in the boathouse to become faulty through improper care, and that it was negligent in failing to inspect properly the other vessels berthed in the boathouse for probable fire hazards. Obviously, this line of argument is mere speculation on behalf of the libelant, and is unsupported by any evidence. The boathouse was completely destroyed, and the fire department was unable to offer any theory as to the origin of the fire after a complete investigation. There are many theories which could be advanced as to the cause of the fire, but each would rest upon speculation and conjecture in the absence of actual proof. The acceptance of the theories advanced by the libelant would necessitate the refusal of equally feasible theories which could be advanced as to the origin of the fire. In the absence of evidence, the Court will not rely on mere speculation or conjecture in determining the origin of the blaze which destroyed the "Mabel H."

## VIII.

■ The Court is of the opinion that the libelant has failed to prove by a fair preponderance that the fire which resulted in the loss of the "Mabel H." was caused by any negligence on the part of the respondent; consequently, libelant has failed to prove a breach of duty owed by the bailee to its bailor, Lee Motor Company.

It follows that the libel herein should be dismissed with costs taxed against the libelant.

Decree in accordance herewith.