HARRISON BROTHERS DRYDOCK & REPAIR YARD, INC., a corporation, Libelant,

v.

J. R. ATKINS, doing business as Alabama Fruit and Produce Company, Respondent.

HARRISON BROTHERS DRYDOCK & REPAIR YARD, INC., a corporation, Libelant,

v.

THE Ship RIO SIXAOLA, her engines, boilers, tackle, furniture, etc., Respondent.

J. R. Atkins, doing business as Alabama Fruit and Produce Company, Claimant.

Nos. 2670, 2685.

United States District Court
S. D. Alabama, S. D.

March 31, 1961.

Amended May 24, 1961.

Albert J. Tully, of Holberg, Tully, Hodnette & Mobley, Mobile, Ala., for libelant.

Wm. E. Johnston, of Johnston & Johnston, Geo. F. Wood, of Pillans, Reams, Tappan, Wood & Roberts, Mobile, Ala., for respondent.

DANIEL HOLCOMBE THOMAS, District Judge.

In early March of 1958, the vessel Rio Sixaola, owned and operated by J. R. Atkins, d/b/a Alabama Fruit and Produce Company, was taken to Harrison Brothers Drydock & Repair Yard, Inc., a corporation organized and existing under the laws of the State of Alabama, for the purpose of repairing certain damages sustained by her in a collision on the Mobile River on February 26, 1958. On March 27, 1958, while in the repair yard, the vessel was damaged as the result of a second accident. These subsequent damages were repaired by the Harrison Brothers company. Bills for these repairs and for certain owner's repairs were submitted to Atkins and he denied they were due and owing. Whereupon Harrison Brothers filed these libels seeking to recover the amount of the bills. There is no claim herein for the costs of the repairs made as a result of the first accident on February 26, 1958.

The respondent readily admits that the repairs made as a result of the second accident were made at a reasonable cost, but contends that the damages necessitat-

ing the repairs were caused by the negligence of the libelant while the vessel was in the libelant's custody and under its control.

The libelant also claims an additional amount allegedly due and unpaid for certain owner's repairs made on the vessel. The respondent contends that these charges are offset by the loss of use of the vessel while undergoing repairs caused in the second accident.

These cases came on for trial, on the question of liability only, the damages being reserved for future determination.

### Findings of Fact

1. In February of 1958, the Rio Sixaola [1] was damaged in a collision with a drilling rig on the Mobile River. After the collision, a survey was made of the damages and specifications for repairs were prepared by a marine surveyor. Bids were accepted on these specifications, and the contract for repairs was awarded to Harrison Brothers Drydock & Repair Yard, Inc.

2. The specifications contained the provision that "The Contractor is to fully protect the Alabama Fruit and Produce Company against any claims for injury to workmen, also for any damage done to the 'Rio Sixaola' while she is undergoing repairs." The libelant's bid stated that it agreed "to faithfully carry out and complete all the repairs, * * * as set forth in the specifications * * * and to abide by all the conditions expressed or implied therein * * *." This bid was accepted by the surveyor.

3. In early March, the vessel was delivered to the libelant's repair yard. She was placed on drydock and the repairs were begun. During the course of the repairs it was observed that the wood of the vessel's hull was beginning to dry out while she was on the drydock and it was suggested by the marine surveyor representing the owner that the hull be wet down, either by hosing the hull or by lowering the drydock into the water. Instead of accepting either of these suggestions, the libelant removed the vessel from drydock on March 26, 1958, and placed her in the water in a mooring berth in the Harrison Brothers' yard. This mooring berth was selected by the libelant and the vessel was moved by its employees.

4. At this point it should be noted that the captain and crew of the Rio Sixaola were living aboard her while she was undergoing repairs. The owner of the vessel had determined that because all of the crew members were residents of South American countries, and because it was originally anticipated that the vessel would be detained for a period of approximately twenty days, it would be more economical to retain the crew and have them perform owner's work during the detention period than to release them. The Court finds this was a reasonable exercise of judgment on the part of the respondent.

5. Harrison Brothers did not employ a night watchman or a caretaker to safeguard its premises and the property under its control during the night hours. As a general rule, there was no one on the premises from midnight, the hour when work normally ceased, until around 6:30 in the morning when the workers returned. On the night of March 26, there were no employees of Harrison Brothers on the premises after the employees ceased work. However, during the entire night, the master and some or all of the crew were aboard the vessel.

6. At approximately 11:30 p. m., on the night of March 26, the captain of the vessel made a casual inspection of the premises. Finding nothing out of order, he retired for the night. He testified that sometime around 5:30 a. m., on the morning of March 27, he felt the boat surge but thought it was nothing more

---

1. The Rio Sixaola is a wooden-hulled, double-planked vessel, with diagonal planking, 107 feet in length; with a 20 foot beam; with an unloaded draft forward of between 4 and 5 feet, and aft of 6 feet.

than a wave from a passing vessel pushing the boat against the dock. He made no inspection at that time. At approximately 7:00 a. m., workmen returning to the yard found the Rio Sixaola was taking on water and had sunk while still tied in her mooring berth. The water near the dock where the vessel was tied was only about four feet deep, so she did not go completely under water. The workmen immediately awakened the crew and began pumping out the vessel. She was eventually refloated and placed back on the drydock.

7. A professional marine diver investigated the bottom of the boat while she was partially submerged. He testified that the bottom of the hull had been pierced on the rounded surface on the port side by two piles. These underwater piles were on an almost straight line parallel to the keel line of the vessel. They measured approximately 12 inches in diameter and were from 4 to 6 feet apart. The diver could not determine whether the piles were permanently embedded in the river-bottom but testified that both were securely embedded in the firm bottom of the river at the time of his inspection. He could not state with certainty how long the piles had been in the water. After the vessel was raised, the piles remained in place and did not float up with the vessel. The tide was normal on the night in question, and there was nothing to indicate that an abnormally low tide had lowered the vessel onto the piles. There was evidence to the effect that other vessels of comparable size had been placed in the same location without any difficulties, but there was also evidence that the Rio Sixaola had been pushed into the shore line until some unknown obstacle prevented her from being pushed further.

8. The damages occasioned by the accident were repaired by Harrison Brothers at cost. The marine surveyor representing the owner of the vessel was advised by the libelant that there was no need to request bids on the necessary repairs as is the usual custom under such circumstances, and no bids were requested. Two months after the vessel was returned to service, the libelant submitted its bill in the amount of $22,858.09 to the owner. Approximately fifty per cent of this amount was for repairs to the hull where it was pierced, and the remainder was for flood damage to the engine compartment. The owner denied any liability.

9. The owner testified that it was agreed between himself and the libelant that the owner's repairs made on the vessel would be offset by the loss of use of the vessel because of the accident. The libelant denied any such agreement and submitted two separate bills to the respondent in the amounts of $7,987.56 and $1,102.53 for owner's repairs.

### Conclusions of Law

#### I

The Court has jurisdiction of the parties and subject-matter now before it.

#### II

There existed between the respondent and libelant a mutual bailment for hire. Niagra Fire Insurance Co. v. Dog River Boat Service, Inc., D.C.Ala. 1960, 187 F.Supp. 528. As this Court stated in the Niagra case, supra, the law of bailment is applicable in suits where a vessel has been damaged when left with another for purposes of repairs.[2]

#### III

In its capacity as bailee, Harrison Brothers was not an insurer of the Rio Sixaola. Indamer Corp. v. Crandon, 5 Cir., 1952, 196 F.2d 5. And unless its common-law duty was enlarged by its bid on the specifications for repairs, as contended by the respondent, its only duty was to exercise ordinary and reasonable care in the protection of the vessel. Consequently, prior to discussing whether or not there was any breach of duty on the

2. Citing Buntin v. Fletchas, 5 Cir., 1958, 257 F.2d 512.

part of the libelant, it is necessary to determine if the libelant's bid did in fact enlarge its common-law duty and make it an insurer of the vessel.

The respondent stresses the point that the libelant's bid agreed to fully protect the vessel from damage and that this agreement enlarged the duty owed by the libelant. The Court does not concur in this proposition. The provision that "The Contractor is to fully protect" the respondent "for any damage done to the 'Rio Sixaola' while she is undergoing repairs," merely sets out expressly what the common-law bailment implies. Reconstruction Finance Corp. v. Peterson Bros., 5 Cir., 1947, 160 F.2d 124; Mulvaney v. King Paint Mfg. Co., 2 Cir., 1919, 256 F. 612. Therefore, if the libelant is to be held responsible for the accident, it must be found to have breached its duty to use ordinary and reasonable care.

### IV

■■ Although, in most cases charging a breach of duty on behalf of a bailee, it is the bailor who originally instigates the action, the fact that here it is the bailee who seeks relief does not alter the well-established rule that the burden of proving a breach of duty by the bailee rests upon the bailor. What was said by this Court in the case of Niagra Fire Insurance Co. v. Dog River Boat Service, Inc., supra, with regard to which party must bear the burden of proof, is applicable here. There it was stated:

"The burden of proving any breach of duty on behalf of the bailee rested upon the libelant [the bailor]. [Citing cases.] However, when the libelant proved that the vessel was delivered to the bailee in good condition and was damaged while in the exclusive possession and control of the bailee, there arose a presumption of negligence on the part of the bailee, and the duty devolved upon the respondent [bailee] to go forward with the evidence and show affirmatively that he exercised ordinary care. * * *

"This presumption or inference did not shift the burden of proof from the bailor to the bailee because this burden never shifts, Buntin v. Fletchas, supra; but imposed upon the bailee the duty to go forward with the evidence and show that it exercised ordinary care under the circumstances. If the bailee does go forward with enough evidence to raise doubts as to the validity of the inference, * * * the bailor does not sustain the burden of persuasion which upon the whole evidence remains upon him, where it rested from the start." 187 F.Supp. at page 531.

Consequently, when it was shown that the Rio Sixaola was damaged while under the custody and control of Harrison Brothers, it became the duty of that company to show that it exercised ordinary care in the protection of the vessel under the circumstances.

■ In the opinion of the Court, the libelant has failed to overcome the presumption of negligence. The theory advanced by the libelant was that the two piles, equal in size, floated down river and positioned themselves upright, though submerged, from four to six feet apart, and that the sloped hull was pierced by them when the vessel was lowered by the low tide. Several witnesses testified that this could have happened, but the theory on the whole is unsupported by the evidence and is mere speculation on behalf of the libelant. There was evidence from the libelant that the river bottom in the area had been thoroughly examined some months prior to the accident and no pilings or other obstacles were found. It was also shown that vessels of similar size had been placed in the location without any resulting difficulties. On the other hand, there was no evidence that other vessels had been pushed as far shoreward as the Rio Sixaola or that the river bottom had been inspected that far inshore. There was also the marine diver's testimony that the objects, which he stated appeared to

be piles, were securely embedded in the river-bottom, and they did not float free when the vessel was eventually raised. In evidence, too, is the fact that the damage was repaired at cost and no bids were requested from other repair yards. Upon the evidence as a whole, the Court cannot accept the speculative theory of the libelant as to the cause of the accident. The Court therefore finds that the libelant has not overcome the presumption of negligence on its part as bailee, and having failed to do so, it must be found negligent in the exercise of its duties as such.

## V

The libelant contends that if it was guilty of negligence, then the respondent must be charged with contributory negligence which caused the damages. This contention is based on the fact that the captain and crew took no action to protect the vessel from further damage. The libelant argues that the captain should have inspected the vessel when he felt the "surge"; and that if he had, he could have either pulled the vessel off the piles by using the libelant's equipment, or pumped the vessel out and saved the engine compartment from flooding. This contention is unsupported by the evidence and common reason. The captain's testimony was that he felt the vessel "surge" against the dock but thought it was nothing more than a wave from a passing vessel. The inaction of the captain and the crew under all the circumstances did not constitute contributory negligence.

The vessel was under the exclusive possession and control of the libelant throughout the period of time it remained in the repair yard of Harrison Brothers, and the presence of the crew aboard the vessel during this period did not relieve the libelant of its duty to safely care for the vessel.

## VI

The libelant further argues that under the doctrine of "avoidable consequences", as expressed in Southport Transit Company v. Avondale Marine Ways, Inc., 5 Cir., 1956, 234 F.2d 947, the respondent should be responsible for those damages which resulted from a failure of the crew to act promptly. That doctrine is quoted in the Southport decision as follows:

"Where the defendant has already committed an actionable wrong, whether tort or breach of contract, then this doctrine limits the plaintiff's recovery by disallowing only those items of damages which could reasonably have been averted * * contributory negligence is to be asserted as a complete defense, whereas the doctrine of avoidable consequences is not considered a defense at all, but merely a rule of damages by which certain particular items of loss may be excluded from consideration * * *" 234 F.2d at page 952.

Having found that the crew and captain were free of any negligence contributing to the damage to the Rio Sixaola, the Court further concludes that the doctrine of "avoidable consequences" has no application to the facts.

## Conclusion

The libelant is not entitled to recover for repairs made to the Rio Sixaola for damages sustained in the accident of March 27, 1958.

There remain for later consideration by the Court questions of the quantum of owner's repairs, demurrage, and costs.

A decree will be entered in accordance with the foregoing findings and conclusions.