Bronson W. CHANLER, Charles W. Chatfield, David C. Clark and John L. Carroll, Plaintiffs,

v.

WAYFARER MARINE CORPORATION, Defendant.

Civ. No. 10–137.

United States District Court
D. Maine, S. D.

June 18, 1969.

David A. Nichols, Camden, Me., Arnold W. Hunnewell, Jr., Boston, Mass., for plaintiffs.

Clifford F. O'Rourke, Camden, Me., Frank H. Handy, Jr., Richard B. Kydd, Boston, Mass., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND DIRECTION FOR ENTRY OF JUDGMENT

GIGNOUX, District Judge.

This is a civil action in admiralty to recover damages caused by the loss of the vessel Frenchman in Camden harbor, Maine on April 25, 1968, while the Frenchman was in the care and custody of the defendant as a bailee for hire. The parties have agreed that the only issues presented are: (a) whether the loss of the Frenchman was the result of any negligence of the defendant; and (b) the value of the Frenchman immediately prior to her loss. The Court has received and considered the evidence and arguments presented by the parties, and now makes its findings of fact and conclusions of law, and directs entry of its judgment as follows:

### FINDINGS OF FACT

The Court's findings of fact are:

1. At all times material hereto the plaintiffs were the owners of the vessel Frenchman, a gas-screw yacht, cutter-rigged, 40 feet in length overall, 34½ feet in length on the water line with a 13½ foot beam and a 6 foot draft, which had been built in France in 1931; the defendant, a Maine corporation, operated a small boat repair and storage yard on Camden harbor, Maine; and Charles E. MacMullen was the president of the defendant and in charge of its operations.

2. Some time in early September 1967 plaintiffs delivered the Frenchman to defendant for winter wet storage at defendant's boatyard. It was understood that the Frenchman would be secured at defendant's dock during the winter months, and that after the completion of spring repairs, she would be returned to her mooring in time to be available for plaintiffs' use during the summer months. Defendant had furnished winter storage for the Frenchman pursuant to a similar arrangement with plaintiffs at least since the winter of 1963–64.

3. Some time in late March or early April 1968, defendant hauled the Frenchman into its yard for spring repairs. Some time in mid-April, defendant launched the Frenchman, and after three or four days at dockside she was moved to her regular mooring. The mooring was located approximately 250 feet offshore and in 16 feet of water (mean low

tide). It consisted of a two-ton granite block, 20 feet of 1¼ inch iron chain, 25 feet of ½ inch galvanized chain and 30 feet of 1 inch nylon rope. The mooring had been in approximately the same location at least since 1963 and had been most recently inspected by defendant in March 1968. In accordance with its usual practice with respect to a recently launched vessel, defendant had caused the Frenchman, while at her mooring, to be inspected daily, and she was inspected by defendant's foreman and found to be riding satisfactorily on the afternoon of April 24, 1968.

4. At approximately 11:00 p. m. on the evening of April 24, 1968 MacMullen left defendant's boatyard for his home. Prior to his departure he walked to the end of the pier, observed what he described as very close to a flat calm, and determined that the three boats, including the Frenchman, which were at moorings in the harbor, would be safe until morning.

5. The official United States Weather Bureau forecasts, both marine and inland, issued during the evening of April 24, 1968 gave no warning of the approach of a storm. The official Eastport to Block Island weather forecasts issued by the United States Weather Bureau in Boston at 5:00 p. m. and 11:00 p. m. that evening[1] were, in pertinent part, as follows:

5:00 P.M. EST April 24, 1968
Small Craft Warnings in Effect from Eastport to Block Island
Southeasterly winds 15 to 25 knots tonight. Thursday winds shifting to westerly in the afternoon and diminishing to 10 to 20 knots * * *.
11:00 P.M. EST April 24, 1968
Small Craft Warnings in Effect
Southeast to South winds 25 to 35 knots and gusty shifting to westerly Thursday afternoon and diminishing to 10 to 20 knots in the afternoon * * *.

6. During the early morning hours of April 25, 1968 a violent storm, with winds of hurricane or near-hurricane velocity[2] struck the Camden area, causing the Frenchman to drag her mooring approximately 100 yards onto the shore of Camden harbor and to be totally destroyed.

7. The Frenchman's mooring was of sufficient size and weight to hold the Frenchman in winds up to 50 knots, and probably in winds in excess of 50 knots, but not in winds in excess of 60 knots.

8. At the time of her loss the Frenchman was in a questionable state of repair, subject to intermittent leaks, had

---

1. MacMullen testified that he had heard on the radio the 5:00 p. m. forecast, but not the 11:00 p. m. forecast.

2. The evidence indicates that the loss occurred some time between 11:00 p. m. on the evening of April 24, when MacMullen left the boatyard, and 5:00 a. m. on the morning of April 25, when MacMullen was awakened by a neighbor who informed him that the Frenchman was ashore. While there is no official record or direct testimony as to the precise wind velocity at Camden harbor between these hours, the severity of the storm is attested to by a number of witnesses. Lloyd A. Dyer, a harbormaster and lobster fisherman on 700 Acre Island (off Islesboro, approximately six miles from Camden), testified that between 2:30 and 3:00 a. m. he was awakened by the wind, went down to his pier and observed conditions such as he had last seen during a hurricane some years ago. MacMullen testified that shortly after 5:00 a. m., when he went to the shore to check the Frenchman's wreckage, the wind velocity was in excess of 55 knots, a typical "hurricane sea" was running, and it was necessary for him to crawl on his knees to reach the shore. The Coast Guardsman in charge of the Curtis Island Light Station at the entrance to Camden harbor testified that he was awakened by the storm about 3:00 a. m.; that it was "very, very windy" with high seas; and that at 8:05 a. m. he obtained an anemometer reading of 70 miles per hour from the southwest. This reading was verified by the official station log. The Beaufort Scale of Wind Forces characterizes winds of 64–75 miles per hour (56–65 knots) as a whole gale (Force 11) and winds above 75 miles per hour (65 knots) as a hurricane (Force 12).

experienced two groundings (in 1964 and in 1966), and could best be characterized as "old and tired."

9. Immediately prior to the sinking the fair market value of the Frenchman was $10,000.[3]

## DISCUSSION

 There is no substantial dispute between the parties as to the pertinent law. The law of bailment is applicable in suits for damages to or loss of a vessel which has been left with another for the purposes of storage or repair. Buntin v. Fletchas, 257 F.2d 512, 513 (5th Cir. 1958); Hall-Scott Motor Car Co. v. Universal Insurance Co., 122 F.2d 531 (9th Cir.), cert. denied, 314 U.S. 690, 62 S.Ct. 360, 86 L.Ed. 552 (1941); International Merchant Marine S. S. Co. v. W. & A. Fletcher Co., 296 F. 855 (2d Cir.), cert. denied, 264 U.S. 597, 44 S.Ct. 454, 68 L.Ed. 868 (1924); Trawler Jeanne d'Arc v. Casco Trawlers, 260 F. Supp. 124, 138 (D.Me.1966); Johnson's Branford Boat Yard v. The Yacht Altair, 260 F.Supp. 841 (D.Conn.1966); Niagra Fire Insurance Co. v. Dog River Boat Service, Inc., 187 F.Supp. 528 (S.D. Ala.1960). The applicable principles were stated by the court in Buntin v. Fletchas, supra, 257 F.2d at 513–514, quoted with approval by this Court in Trawler Jeanne d'Arc v. Casco Trawlers, supra, 260 F.Supp. at 138, as follows:

> When a bailor sues a bailee for loss of the thing bailed, and charges the bailee with negligence, the question arises whether the bailor must affirmatively show negligence, or whether the bailee must affirmatively show due care. The bailor has the burden of proof because he has the affirmative of the case; however, when the bailor shows delivery to a bailee and the bailee's failure to return the thing bailed, he makes out a prima facie case of negligence against the bailee. This does not, however, shift the burden of proof from bailor to bailee. The burden of proof never shifts. When, however, the bailor has made out a prima facie case, "it then becomes the duty of the bailee to go forward with the evidence and explain his default by showing facts and circumstances sufficient in law to exonerate him from liability for injury." (Citations omitted.) [4]

Applying these principles to the present case, the Court is of the view that plaintiffs have failed to establish that any negligence of defendant caused the loss of the Frenchman.

Plaintiffs charge defendant with being negligent in the first instance in placing the Frenchman on a mooring which was

---

3. Because all witnesses agree that the Frenchman was a "unique" vessel on the Maine coast and because no witnesses were aware of any sale of a comparable vessel, the evidence of value has been of minimal assistance to the Court. No formal appraisal was available, and the opinions ranged from $20,000 (testified to by one of the plaintiffs and by a marine broker who testified for plaintiffs) to $4,-000 (testified to by MacMullen and a marine broker who testified for defendant). The only reasonably objective and disinterested opinion as to value is to be found in an official accident report filed by MacMullen immediately after the loss, in which he stated that the property damage sustained was $10,000.

4. The court in Buntin v. Fletchas, supra, 257 F.2d at 514, points out that there is disagreement among the cases as to the extent of the bailee's duty to go forward with evidence explaining his default:

> One view is that the bailee need show only that the loss was caused by some act consistent with due care on his part, such as an act of God; then the bailor must affirmatively show negligence. Another is that the bailee must do something more than merely show that the loss was occasioned by something consistent with due care; he must show affirmatively acts which constitute due care, because the circumstances of the loss are generally peculiarly within his knowledge. (Citations and footnotes omitted.)

Under either view, defendant has satisfied its burden in this case.

insufficient to hold her in the conditions of wind and sea which in fact occurred. But all of the evidence is that she was placed on the same mooring to which she had been secured, without event, since 1963, and that the mooring was of sufficient size and weight to hold her except in extreme weather. Nevertheless, plaintiffs contend that defendant was negligent because of its failure to anticipate the violent storm which developed and to take reasonable precautions to protect the Frenchman from any resulting damage or loss. However, the evidence shows that the official weather forecasts during the evening of April 24 gave no hint that winds of hurricane or near-hurricane force were to be anticipated. Furthermore, MacMullen's own observations at 11:00 p. m. that evening do not suggest that he should have been alerted to any danger to the vessels in his charge.

On all the evidence, the Court is of the view that the loss of the Frenchman was caused by a violent storm which could not reasonably have been anticipated on the evening of April 24; that defendant has shown that it exercised that degree of reasonable care for the safety of the Frenchman which foreseeable circumstances required; and that the loss of the Frenchman was not caused by any negligence of defendant as the vessel's bailee.

### CONCLUSIONS OF LAW

The Court's conclusions of law are:

1. This Court has jurisdiction of the action and of the parties thereto.

2. The loss of the Frenchman was not caused by any negligence of the defendant.

3. The plaintiffs are not entitled to recover of the defendant in this action.

### DIRECTION FOR ENTRY OF JUDGMENT

In accordance with the foregoing findings of fact and conclusions of law,

It is ordered, adjudged and decreed that judgment will be entered for the defendant against the plaintiffs dismissing the action with prejudice and without costs, and the Clerk of this Court is hereby directed to make entry of such judgment forthwith.